This is an appeal from a ruling of the Circuit Court of Hinds County dismissing the plaintiff's tort action as to the defendant Dr. Chawla on grounds of sovereign immunity.
The plaintiffs are the surviving heirs of the late Wesley Marshall. Their complaint alleges that on October 25, 1980, Wesley Marshall became violently ill with a severe headache and vomiting. His wife, Margaret Marshall, took him to the Kuhn Memorial State Hospital, a state eleemosynary institution located in Vicksburg. Wesley Marshall was admitted to the emergency room; the attendants called Dr. Anwant Chawla, who was on duty at the time. Dr. Chawla did not come to the emergency room to examine Marshall, but told the staff to administer dramamine to him. This was done, and Marshall was discharged without further treatment at about 2 o'clock in the morning on October 26. He was taken home, where he suffered a stroke and died approximately ten hours later.
The plaintiffs filed their complaint in the Circuit Court of Hinds County against the Board of Trustees of the State Eleemosynary Institutions; the hospital itself; Dr. Chawla; and hospital supervisors Dr. K.S. Potnis and Charles Harper, charging them with negligence which was the proximate cause of Wesley Marshall's death. The *Page 1375 
Board of Trustees, the hospital and Charles Harper moved to dismiss on grounds of sovereign immunity. This motion was granted on May 7, 1984. Dr. Potnis moved to dismiss on the grounds that he was acting in the exercise of duties where discretion and decision-making were required and he was thus immune from suit on the basis of public official immunity. This motion was granted on May 8, 1984. Finally, Dr. Chawla moved to dismiss on grounds of sovereign immunity. On December 6, 1984, the trial court granted this motion announcing it was relying on this Court's decision inHudson v. Rausa, 462 So.2d 689 (Miss. 1984). Feeling aggrieved, the plaintiffs are appealing as to Dr. Chawla; the other defendants are not parties to this appeal.
 ARGUMENTS OF LAW
The only issue in this appeal is whether Dr. Chawla was protected from liability by the doctrine of sovereign immunity or by the qualified immunity given to public officials acting in a discretionary capacity within the scope of their duties. The landmark decision of Pruett v. City of Rosedale, 421 So.2d 1046
(Miss. 1982), provided that sovereign immunity would be abolished only for causes accruing after July 1, 1984; causes accruing before that date would be governed by the traditional common law immunities. In the present case, the cause accrued in 1980. Therefore, the plaintiffs action is governed by the traditional common law immunities and is unaffected by the rules laid down inPruett and by the subsequent legislative enactments in the realm of sovereign immunity. Properly speaking, the present case does not involve sovereign immunity at all, since that doctrine in the strict sense applies only to the state government and its subdivisions, rather than to their individual employees. At common law, however, Mississippi public officials did enjoy a qualified immunity for injuries inflicted by them while acting within the scope of their duties. Like many other states, Mississippi has commonly applied a distinction between the "discretionary" and "ministerial" duties of such officials; as a rule, officials are protected from suit if they were acting in a "discretionary" capacity. E.g., Karpovs v. Mississippi,663 F.2d 640, 647, (5th Cir. 1981); Davis v. Little, 362 So.2d 642, 645 (Miss. 1978); State, ex rel. Russell v. McRae, 169 Miss. 169, 179, 152 So. 826, 828 (1934). The prevailing test for the classification of these deeds was set forth in Poyner v.Gilmore, 171 Miss. 859, 158 So. 922 (1935):
 The most important criterion . . . is that if the duty is one that has been positively imposed by law and its performance required at a time and manner or upon conditions which are specifically designated, the duty to perform under the conditions specified not being dependent upon the officer's judgment or discretion, the act being discharged thereof is ministerial. 171 Miss, at 864-65, 158 So. at 923.
Otherwise, the act is presumably discretionary. The result has been a fairly broad application of the public official immunity principle in Mississippi. Hudson v. Rausa, 462 So.2d 689 (Miss. 1984), the case on which the trial judge relied, illustrates this. Rausa was a physician employed by the State Board of Health charged with carrying out a program to prevent the spread of tuberculosis. Pursuant to this program he prescribed a certain drug to a man named Hudson. The drug in question sometimes produced hepatitis as a side effect in certain individuals; Hudson proved to be one of these individuals and died of hepatitis after the drug was administered to him. His survivors sued under the wrongful death statute and Rausa claimed sovereign immunity as a defense. The Hudsons responded that while the formation of the overall health policy against tuberculosis might have been "discretionary", particular actions in carrying it out, such as the treatment of specific individuals, were ministerial. The court rejected this narrow view, saying "we believed the discretion given to the defendants applied not only to their decisions with instituting a program for control, but also the treatment administered in carrying out such policies." The court came very close to saying that "all" *Page 1376 
medical decisions would be immunized from suit if they occurred in the context of a state institution because "the administration of medical treatment involves the exercise of considerable professional judgment and its discretion. . . ." Hudson, 462 So.2d at 695-96.
It is obvious that if Hudson controls this case the dismissal of the action against Dr. Chawla was proper and the appellants must lose. The appellants attempt to distinguish Hudson by arguing that Hudson was immunized from liability by his status as a health department official implementing a health policy enacted for the good of the people of the state as a whole, as opposed to Dr. Chawla who was "simply a physician employed by the state hospital to treat the general public and his actions of the treatment of patients was subject to the same standards of care as other physicians." This interpretation cannot be reconciled with the Hudson court's finding that the physician was immunized for particular acts of medical treatment. Nor is it clear why the distinction between a physician performing medical treatment in his capacity as a county health official is distinct in any legally significant way from the same physician performing medical treatment as a staff member in a state hospital.
The appellants do not, in so many words, ask this Court to overrule Hudson. They do, however, ask this Court to hold that the "discretion" exercised by a doctor in the normal practice of medicine is not of the type which should immunize a doctor in public service from personal liability. As stated above, any such holding by this Court would effectively overrule Hudson.
Most jurisdictions have not squarely confronted the issue of whether a doctor in public service is immunized from all liability for negligence on account of the "discretionary" character of his duties. Of jurisdictions which have considered the issue, a minority adhere to Mississippi's approach of absolute immunity. Some courts have dealt with the matter in summary fashion. Bates v. Carlow, 430 F.2d 1331, 1332, (10th Cir. 1970). Other jurisdictions have been attracted by what might be called the Michigan rule that medical decision making is "inherently discretionary." de Sanchez v. Genoves-Andrews,161 Mich. App. 245, 410 N.W.2d 803, 810 (1987). See also, Est. ofBurks v. Ross, 438 F.2d 230, 235 (6th Cir. 1971); Baker v.Straumfjord, 10 Or. App. 414, 500 P.2d 496-97 (1972).
A larger number of jurisdictions, however, have rejected Mississippi's approach and refused full immunity to physicians in public service. Most of these decisions hold that the "discretion" exercised by an official to be protected by immunity must be of a special type, since the ordinary meaning of "discretion" would yield an immunity broader than necessary to implement the goals of the policy. As one court said:
 It would be difficult to conceive of any official act that did not admit some discretion in the manner of its performance, even if it involved only the driving of a nail. Ham v. Los Angeles County, 46 Cal.App. 148, 189 P. 462, 468 (1920).
A leading case in this tradition was Henderson v. Bluemink,511 F.2d 399 (D.C. Cir. 1974), in which an army doctor tried to argue that his status as a medical officer involved him in discretionary duty and thus insulated him from liability for tortious conduct in the line of duty. The D.C. Circuit rejected this argument, saying: "To be sure, the acts complained of involve the exercise of discretion in the normal usage of the term, but the significant factor is that the discretion exercised might have been medical rather than governmental." The court explained the distinction between the two types of discretion by reference to the purpose of governmental immunity.
 The chief policy underlying the creation of immunity for lower governmental officials is mainly that which stems from the desire to discourage the "fearless, vigorous and effective administration of policies of the government." [citations omitted]. However, that policy is not applicable to the exercise of normal medical discretion since doctors making such judgments would face the same liability outside of government service as they *Page 1377 
would face if the complaint below is upheld. [Therefore] the threat of liability for negligence would not deter the fearless exercise of medical discretion within government service any more than the same threat deters the exercise of medical discretion outside of government. 511 F.2d at 402-03.
A number of courts have been influenced by the Henderson
decision to adopt a distinction between "discretionary" and "ministerial" acts in which "discretion" will not insulate the official from liability unless the discretionary acts are essentially "governmental in character." Madden v. Kuehn,56 Ill. App.3d 997, 14 Ill.Dec. 852, 372 N.E.2d 1131, 1134 (1978). See also, Irwin v. Arrendale, 117 Ga. App. 1, 159 S.E.2d 719, 725 (1967); Voss v. Bridwell, 188 Kans. 643, 364 P.2d 955, 967 (1961); Cooper v. Bowers, 706 S.W.2d 542, 543 (Mo. App. 1986);Protic v. Castle Co., 132 Wis.2d 364, 392 N.W.2d 119, 122 (Wis.App. 1986).
At first glance these decisions seem persuasive. It is obviously true that not all forms of discretion are alike and in some other spheres of government the rule laid down in Hudson
might have to be modified to account for that fact. But in the case of medical doctors in public service, special circumstances are present which make a broader grant of immunity sound policy. In saying that "the threat of liability for negligence would not deter the fearless exercise of medical discretion within government service any more than the same threat [would do so] outside government," the Henderson court overlooked the objection that such vulnerability might very well deter doctors from entering government service in the first place. The protection of qualified immunity no doubt serves as a powerful incentive to many doctors to serve in state eleemosynary institutions and this in turn, makes medical care available to many who not be able to afford medical care in private facilities.
As noted in Grantham v. Ms. Dept. of Corrections,522 So.2d 219 (1988), the legislature may, by prescribing specific duties of individual state employees, implicitly create tort liability for breaches of them resulting from gross negligence. But no such statute exists for state medical employees.
Following Hudson, we reaffirm the immunity enjoyed by physicians on the staff of state eleemosynary institutions. Accordingly, the dismissal of the present action must be affirmed.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, SULLIVAN, GRIFFIN and ZUCCARO, JJ., concur.