Elnora SOREY, Individually and as Personal Representative of the Wrongful Death Beneficiaries of Eric Sorey, Deceased, and as Personal Representative of the Estate of Eric Sorey, Deceased, Plaintiffs-Appellees,

v.

A. Boyd KELLETT, M.D., et al., Defendants-Appellants.

No. 87–4856.

United States Court of Appeals, Fifth Circuit.

July 18, 1988.

Dorrance Aultman, Hattiesburg, Miss., for Kellett.

Robert L. Gibbs, Asst. Atty. Gen., Jackson, Miss., for Harrington & Carmody.

John M. Deakle, Hattiesburg, Miss., for plaintiffs-appellees.

Before THORNBERRY, WILLIAMS, and SMITH, Circuit Judges.

THORNBERRY, Circuit Judge:

This is an appeal from the district court's pretrial order denying a claim of qualified immunity to causes of action based on Mississippi law. We hold that this court has jurisdiction of the appeal, and we reverse.

I.

Eric Sorey played football under an athletic scholarship at the University of Southern Mississippi (USM). One day in early August 1986, Sorey collapsed on the football practice field. He was taken to the training room complaining of nausea and severe stomach cramps. His condition did not improve, and two hours later he was taken to the USM clinic. Sorey remained at the clinic for four or five hours, during

which time he was examined by the team physician, Dr. Boyd Kellett. When Sorey failed to improve, a fellow student took him to Methodist Hospital, but he died on the way.

Eric Sorey's mother, Elnora Sorey, filed this action in district court alleging claims under 42 U.S.C. § 1983 and state tort and contract law. She named as defendants USM; the members of Mississippi's Board of Trustees of the State Institutions of Higher Learning; USM's head football coach, Jim Carmody; USM's athletic trainer, Earnest Harrington; and Dr. Kellett. The basis for Sorey's federal and state claims included alleged negligence by Harrington and Kellett, violation of a nondelegable duty to take care of football players by Coach Carmody, and failure to provide sufficient funds to hire competent employees by the Board of Trustees.

All defendants were named in their official capacities, and the noninstitutional defendants were also named in their individual capacities. The district court eventually dismissed the federal claims against all defendants, and the state claims against all defendants except Carmody, Harrington, and Kellett in their individual capacities. The district court denied motions by Carmody, Harrington, and Kellett to dismiss or for summary judgment on the basis of qualified immunity. Those defendants brought this immediate appeal of the court's order.

## II.

Under 28 U.S.C. § 1291, the courts of appeals have jurisdiction over "final decisions" of the district courts. Ordinarily, this section precludes review of a district court's pretrial orders until appeal from the final judgment. In *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 1225–26, 93 L.Ed. 1528 (1949), however, the Supreme Court held that some district court decisions belong to "that small class which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that

appellate consideration be deferred until the whole case is adjudicated." Under this "collateral order doctrine," some decisions that otherwise would be interlocutory may be appealed as final decisions under § 1291.

The Court has held that a final pretrial order denying a claim of qualified immunity under federal law is a final decision appealable under the collateral order doctrine. *Mitchell v. Forsyth*, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). The Court noted that an essential characteristic of an issue appealable under the collateral order doctrine is that "unless it can be reviewed before [the proceedings terminate], it can never be reviewed at all." 105 S.Ct. at 2815 (quoting *Stack v. Boyle*, 342 U.S. 1, 72 S.Ct. 1, 7, 96 L.Ed. 3 (1952)). For example, the Court had previously held that a denial of absolute immunity was appealable, *Nixon v. Fitzgerald*, 457 U.S. 731, 102 S.Ct. 2690, 73 L.Ed.2d 349 (1982), because "the essence of absolute immunity is its possessor's entitlement not to have to answer for his conduct in a civil damages action." *Mitchell*, 105 S.Ct. at 2815. Qualified immunity, the Court held, shared that characteristic of absolute immunity. The consequences with which the Court was concerned when it recognized qualified immunity were "not limited to liability for money damages; they also include[d] 'the general costs of subjecting officials to the risks of trial—distraction of officials from their governmental duties, inhibition of discretionary action, and deterrence of able people from public service.'" *Id.* (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 2737, 73 L.Ed.2d 396 (1982)). Qualified immunity, as a result, "is an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Id.* 105 S.Ct. at 2816.

■ The present case, however, is different from *Mitchell* because the asserted defense here is one of qualified immunity under state law. This circuit has not previously addressed whether state officials have an immediate right to appeal a denial

of qualified immunity when the immunity is claimed solely under state law. From *Mitchell*'s framework of analysis, however, it is clear that our decision must turn on whether the state's doctrine of qualified immunity, like the federal doctrine, provides a true immunity from suit and not a simple defense to liability. The Sixth Circuit reached the same conclusion when it confronted this issue. In *Marrical v. Detroit News, Inc.*, 805 F.2d 169 (6th Cir. 1986) (per curiam), the court said:

> [T]he right to an interlocutory appeal from the denial of a claim of absolute or qualified immunity under state law can only exist where the state has extended an underlying substantive right to the defendant official to be free from the burdens of litigation arising from acts taken in the course of his duties.

*Id.* at 172.

Initially, we must address Sorey's argument that, under *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), we must dismiss the appeal because the Mississippi rules of procedure do not allow an appeal as a matter of right from a decision in state court denying a claim of qualified immunity. Appealability under 28 U.S.C. § 1291, however, is clearly a matter of federal law; state procedural law is not directly controlling. *Budinich v. Becton Dickinson & Co.*, —— U.S. ——, 108 S.Ct. 1717, 100 L.Ed.2d 178 (1988) (holding in a diversity case that federal law determines appealability under the collateral order doctrine). As a result, Mississippi's procedural rules are relevant only for what they reveal about the state's view on the substantive issue of whether qualified immunity is an immunity from suit or merely a defense to liability.

■ Mississippi courts have not directly considered whether the state's doctrine of qualified immunity provides an immunity from suit or a defense to liability. The courts have expressed generalized concerns of protecting official decision makers from liability. In *State ex rel, Brazeale v. Lewis*, 498 So.2d 321, 322 (Miss.1986), for example, the court wrote: "The basis for extending sovereign immunity [sic] to government officials lies in the inherent need to promote efficient and timely decision-making without lying in fear of liability for miscalculation or error in those actions." Also, in *Davis v. Little*, 362 So.2d 642, 644 (Miss. 1978), the court noted that "the purpose of the immunity is to protect the official in his decision-making role." But those cases did not present the issue of whether qualified immunity was a defense to liability or an immunity from suit. More telling, therefore, is Mississippi's rule that a successful defense of qualified immunity entitles an official to dismissal before trial. *See, e.g., Lewis*, (affirming the trial court's grant of a motion to dismiss before trial on the basis of qualified immunity); *White v. City of Tupelo*, 462 So.2d 707 (Miss.1984) (same). In addition, although there is no appeal as a matter of right to the Mississippi Supreme Court when a claim of qualified immunity is denied, the court has accepted interlocutory appeals of such denials through a certification procedure similar to 28 U.S.C. § 1292(b). *See, e.g., Region VII, Mental Health-Mental Retardation Center v. Isaac*, 523 So.2d 1013, 1015 (Miss. 1988).

When the Sixth Circuit considered this question as presented under Michigan law, it refused to allow immediate appeal from a denial of Michigan qualified immunity because it found "no reason to believe that the Michigan Supreme Court ... intended to afford state officers immunity from suit as well as from liability." *Marrical*, 805 F.2d at 173. In *Marrical*, however, the court specifically found that Michigan courts were aware of the "longstanding" distinction drawn between immunity from suit and immunity from liability. Despite that awareness, the Michigan courts had repeatedly described qualified immunity only as an immunity from liability. *Id.* Furthermore, the court in *Marrical* was "offered no cases in which a Michigan court has granted summary judgment or dismissal before trial in order to protect against the burdens of litigation." *Id.* at 174. Neither assertion is true of Mississippi, and we therefore think that the *Marrical* result cannot be directly applied here.

We are persuaded that the Mississippi courts would recognize that the social costs of litigation against public officials—"the expenses of litigation, the diversion of official energy from pressing public issues, and the deterrence of able citizens from acceptance of public office," *Harlow,* 102 S.Ct. at 2736—suggest that qualified immunity should be an immunity from suit, not merely a defense to liability. As a result, a denial of Mississippi qualified immunity, like a denial of federal qualified immunity, is properly appealable under the collateral order doctrine.

### III.

In Mississippi, public officials sued in their individual capacities have a limited, qualified immunity that extends to "discretionary," not to "ministerial" acts. *Davis v. Little,* 362 So.2d 642, 643 (Miss.1978). A discretionary act is one requiring "personal deliberation, decision and judgment." *Id.* (quoting W. Prosser, Law of Torts § 132 (4th ed. 1971)). A ministerial act, by contrast, is one "positively imposed by law and its performance required at a time and in a manner or upon conditions which are specifically designated, the duty to perform under the conditions specified not being dependent upon the officer's judgment or discretion." *Poyner v. Gilmore,* 171 Miss. 859, 864, 158 So. 922, 923 (1935).

The district court in this case interpreted Mississippi law to mean that discretionary decisions are "policy decisions," and that officials engaging in policy decisions are entitled to immunity because "[j]udges and jurors are in no better position to evaluate the reasonableness of policy determinations than are those officials who were charged with making them." *Pruett v. City of Rosedale,* 421 So.2d 1046, 1052 (Miss.1982) (en banc). As a result, the district court held that Kellett, Harrington, and Carmody, defendants in this case, were not entitled to public official immunity because, when Sorey was injured, they "were not acting to further any public health goal but were simply administering medical care."

Since the district court's decision, however, the Mississippi Supreme Court has decided another case with very similar facts. In *Marshall v. Chawla,* 520 So.2d 1374 (Miss.1988), surviving heirs sued a doctor at a state hospital for negligence that led to the death of the patient. The doctor asserted that he was protected by "the qualified immunity given to public officials acting in a discretionary capacity within the scope of their duties." *Id.* at 1375. The court first cited its earlier decision in *Hudson v. Rausa,* 462 So.2d 689 (Miss.1984), which had granted immunity to a physician employed by the State Board of Health and charged with carrying out a program to prevent the spread of tuberculosis. *Hudson* had rejected a narrow view of discretionary actions, and had held that "the discretion given to the defendants applied not only to their decisions with reference to instituting a program of control, but also to the treatment administered in carrying out such policies." *Id.* at 695. As a result, *Hudson* had sustained the defendants' immunity defense. In attempting to distinguish *Hudson,* the plaintiffs in *Marshall* argued that the doctor in *Marshall* was not a "health department official implementing a health policy enacted for the good of the people of the state as a whole, ... [but] simply a physician employed by the state hospital to treat the general public...." 520 So.2d at 1376. The court, however, rejected that position, and held that *Hudson* "came very close to saying that 'all' medical decisions would be immunized from suit if they occurred in the context of a state institution...." *Id.* at 1375–76. The court then said:

[I]n the case of medical doctors in public service, special circumstances are present which make a broader grant of immunity sound policy.... [Vulnerability to liability for negligence] might very well deter doctors from entering government service in the first place. The protection of qualified immunity no doubt serves as a powerful incentive to many doctors to serve in state eleemosynary institutions and this in turn, makes medical care available to many who [might] not be able to afford medical care in private facilities.

....

Following *Hudson,* we reaffirm the immunity enjoyed by physicians on the staff of state eleemosynary institutions. *Id.* at 1377.

We think that *Marshall* mandates a finding that defendant Kellett, the team physician, and defendant Harrington, the team trainer, were performing discretionary functions in administering medical treatment to Sorey. We can find no distinction between the kind of decisions that Harrington and Kellett are alleged to have made concerning Sorey's medical care and those that the defendant doctor in *Marshall* made. Although it may seem harsh to accord such broad immunity from liability to state employees engaged in medical care, *Marshall* makes it clear that Mississippi has struck such a balance between the needs of injured persons and the state's interest in unfettered decision making by public employees.

We also think that Carmody, the head football coach, is entitled to immunity under Mississippi law. The plaintiff alleged only that Carmody failed in a "nondelegable duty" to oversee the football program and, in particular, the custody and care of football players. Mississippi courts have held, however, that public officials sued merely because of their general authority over the program or institution that is alleged to have caused injury are entitled to qualified immunity. For example, in *Region VII, Mental Health-Mental Retardation Center v. Isaac,* 523 So.2d 1013 (Miss. 1988), a resident of a state-owned apartment for the mentally retarded sued state mental health commissioners to recover for injuries inflicted by his roommate. The court held that the commissioners were protected by qualified immunity because they had "no role in the roommate selection or supervision of 'clients'," but merely exercised discretionary authority over the establishment and implementation of the program. *Id.* at 1017. Similarly, in *White v. City of Tupelo,* 462 So.2d 707 (Miss.1984), an individual sued the Tupelo fire chief for injuries sustained when a Tupelo fire truck struck his car. The court held the fire chief immune because he had been sued

"solely by virtue of his official capacity and not because of any actual personal involvement in the incident." *Id.* at 710. The decisions in *Isaac* and *White* are explicable because a public official charged only with general authority over a program or institution naturally is exercising discretionary functions. With no more particularized connection to the plaintiff's injury, such an official will be immune from individual liability under Mississippi law.

## IV.

For the above reasons, we conclude that qualified immunity under Mississippi law shields appellants from suit in this case. The district court's order denying appellants' motions to dismiss is therefore

REVERSED.