618 So.2d 1274 (1993)
Bobbie SULLIVAN, R.N.
v.
Effie SUMRALL, By and Through her Natural Daughter, Tommie Ritchey, and Thomas Sumrall, Individually.
No. 90-IA-0244.
Supreme Court of Mississippi.
May 13, 1993.
J. Robert Ramsay, Nancy E. Steen, Bryant Clark Dukes Blakeslee Ramsay & Hammond, Hattiesburg, for appellant.
Ben F. Galloway, Owen Galloway & Clark, Gulfport, W. Dal Williamson, Caves Williamson & Caves, Laurel, for appellee.
Before DAN M. LEE, P.J., and SULLIVAN and McRAE, JJ.
McRAE, Justice, for the court:
In this interlocutory appeal from the Circuit Court of the Second Judicial District of Jones County we are asked to consider whether a nurse employed by a county hospital is shielded by public official qualified immunity from a medical negligence action brought against her individually. Bobbie Sullivan raised the defense of qualified immunity and/or absolute immunity pursuant to Miss. Code Ann. § 41-13-11, et seq. (Supp. 1991). However, because Sullivan, as an employee of a county hospital, enjoys no qualified immunity, regardless of whether she has liability insurance, we affirm the Circuit Court's denial of her motion for summary judgment and remand this action to the circuit court for further proceedings.

I.
Sullivan worked as a registered nurse at Jones County Community Hospital, now known as South Central Regional Hospital, *1275 a community hospital established pursuant to Miss. Code Ann. § 41-13-15 (Supp. 1991). At the time of the incident which is the subject of this lawsuit, Sullivan was covered by a $1,000,000 medical professional liability insurance policy which she had obtained from the Chicago Insurance Company.
Effie Sumrall was admitted to Jones County Community Hospital on April 26, 1988, suffering from a severe headache, as well as sinusitis and an upper respiratory infection. Her physician, Dr. Victor Applewhite, ordered a CAT scan for the following morning and prescribed Demerol and Dramamine to alleviate pain. Dr. Applewhite stated in his deposition that the medication was prescribed "p.r.n." which, in the hospital, he explained, means every four hours. He also ordered her vital signs to be monitored every four hours.
Referring to Mrs. Sumrall's medical chart, Nurse Sullivan stated in her deposition that Mrs. Sumrall had received injections of Demerol and Dramamine at 6:45 p.m. and 10:00 p.m. on April 26th. Nurse Sullivan checked on Mrs. Sumrall at 11:00 p.m. An LPN took her temperature and blood pressure at midnight. Her blood pressure was recorded at 90/60, down from 160/80 at 8:00 p.m. At 12:25 a.m., two hours and twenty-five minutes after her last medication, Nurse Sullivan administered another injection of Demerol and Dramamine because Mrs. Sumrall was still complaining of pain. Although hospital rules require consultation with a patient's admitting physician when there is a question about administering medication, Nurse Sullivan stated that she did not call Dr. Applewhite before giving Mrs. Sumrall another injection.
At 4:00 a.m., when Nurse Sullivan made an hourly check on Mrs. Sumrall, she discovered that her patient was not breathing. She issued a Code 99, an emergency signal for a patient in acute distress. An emergency room physician, a Dr. Balaski, responded and revived Mrs. Sumrall.
Mrs. Sumrall was diagnosed as having suffered "respiratory arrest, with what appears to be hypoxic brain injury." Her CAT scans revealed no bleeding, but other tests "revealed [a] grossly abnormal EEG with diffuse and severe slowing." She was transferred to the Jones County Nursing Home where she apparently remained in a coma at the time of trial.
On October 21, 1988, Mrs. Sumrall's daughter and husband filed a complaint against Jones County Hospital. They alleged that the hospital had been negligent in monitoring and medicating her; in failing to notify a physician when her vital signs became irregular; in failing to properly assess her condition and intervene; and in failing to exercise reasonable care. The complaint was amended on January 31, 1989, naming Nurse Sullivan, individually, as a defendant as well.
Following a settlement with the hospital, which had a liability policy in effect, the complaint against it was dismissed with prejudice on June 19, 1989.
Sullivan filed a motion for summary judgment on January 24, 1990. She asserted that as a matter of law, she was shielded from liability under the qualified immunity afforded public officials engaged in their performance of discretionary functions. The circuit court denied the motion, finding that pursuant to Johnese v. Jefferson Davis Memorial Hospital, 637 F. Supp. 1198 (S.D.Miss. 1986), Sullivan was not within the class of individuals protected by the immunity provisions of Miss. Code Ann. § 41-13-11 (Supp. 1991). The circuit court further denied her request for certification of an interlocutory appeal, holding that the case did not meet the requirements of Miss. Sup.Ct. Rule 5. This Court, however, granted Sullivan's Petition for Interlocutory Appeal and Motion to Stay Proceedings on June 27, 1990.

II.
Sullivan asserts on appeal that, as an employee of a community hospital, she is a public official and therefore, entitled to raise the shield of qualified immunity because she classifies her duties as discretionary rather than ministerial. The genesis of that qualified immunity enjoyed by public officials long has been recognized by *1276 this Court. Poyner v. Gilmore, 171 Miss. 859, 158 So. 922 (1939); Hudson v. Rausa, 462 So.2d 689 (Miss. 1984); Marshall v. Chawla, 520 So.2d 1374 (Miss. 1988); State of MS for the Use and Benefit of Brazeale v. Lewis, 498 So.2d 321 (Miss. 1986). As Sullivan points out, this Court has not specifically addressed whether a nurse employed by a community hospital is entitled to a claim of qualified immunity. She therefore relies primarily on Marshall and Hudson where this Court found that physicians employed by the State were shielded from medical malpractice actions by qualified immunity. In those cases, we cited Poyner v. Gilmore as our authority for the prevailing test for classifying actions as discretionary or ministerial. If a duty is one that has been positively imposed by law or it is to be performed at a specific time, in a specific manner or under designated conditions, with no room for individual judgment or discretion, the act charged therein is ministerial.
This Court recently announced in Womble v. Singing River Hospital, 618 So.2d 1252 (Miss. 1993), that
we hold that common law qualified public official immunity will be restricted to its designed purpose. Accordingly, it will not be extended to decisions that involve only individual medical treatment. Those decisions will be judged on the same standards as if made by private providers.
618 So.2d at 1265.
The Womble Court revisited Hudson and Marshall, overruling those cases as they applied to medical personnel employed by a public hospital. The Court further stated that there was nothing inherently governmental about decisions regarding individual medical treatment. Moreover, the fact that a physician or other medical provider is employed by the State does not expose him to any greater threat of suit than he would otherwise face in private practice. 618 So.2d at 1264.
We recognized in Pruett v. City of Rosedale, 421 So.2d 1046 (Miss. 1982), that public official immunity is of a different stripe than governmental immunity. The former protects the deliberative and decisional process of government, while the latter merely protects the public treasury. State of Mississippi for the Use and Benefit of Brazeale v. Lewis, 498 So.2d 321, 322 (Miss. 1986); Pruett, 421 So.2d at 1052. Thus, while insurance may be relevant to the latter it is not to the former. Public official immunity is also borne out of a recognition that public policy decisions entrusted to another branch of government are ordinarily ill-suited for judicial second guessing. The Pruett Court observed:
Judicial review of basic policy-making decisions continues to be regarded by many as inappropriate because courts have no standards by which to judge such decisions. Judges and jurors are in no better position to evaluate the reasonableness of policy determinations than are those officials who are charged with making them. The reasonable man standard of tort law is not an appropriate measure for the political, social or economic desirability of government programs and the methods selected for pursuing them. State tort standards cannot adequately control those government decisions in which, to be effective, the decision maker must look to considerations of public policy and not merely to established professional standards or to standards of general reasonableness.
421 So.2d at 1051-52.
In keeping with this purpose, restricting the operation of the public official immunity doctrine to its proper sphere, discretionary decisions establishing governmental policy, the protection is no protection, and, thus, there is no need for an insurance exception. Accordingly, as we stated in Womble, Hudson and Marshall are overruled so far as they grant qualified immunity to medical providers or employees of community hospitals. Moreover, we hold that there is no qualified immunity for any public hospital employees making treatment decisions. Discretion exercised by medical personnel in making the treatment decisions is not the sort of individual judgment sought to be protected by the qualified immunity bestowed upon public *1277 officials. We further affirm the decision of the circuit court denying Sullivan's motion for summary judgment and direct the circuit court to review M.R.C.P. Rule 56(h).

III.
In her separate amended answer to the amended complaint, Sullivan also raised the defense of absolute immunity pursuant to Miss. Code Ann. § 41-13-11 (Supp. 1991), which provides immunity for community hospitals established pursuant to Miss. Code Ann. § 41-13-15 (Supp. 1991). On appeal, she rejects the applicability of the statute's waiver of immunity provisions, asserting that it does not address the qualified immunity of hospital employees.
Miss. Code Ann. § 41-13-11(1) provides immunity from suit for the owners and boards of directors of community hospitals subject to the limitations of subsection (2), which authorizes the owner or board of trustees of a community hospital to, in its discretion, obtain liability insurance and provides in relevant part as follows:
No authority granted by this subsection and no act of the board of trustees of any community hospital or of any agent, representative or employee thereof shall be construed as a waiver of the immunity of such hospital or board of trustees from suit for negligent, tortious or unauthorized acts of said board of trustees, members of the board of trustees, agents, servants or employees or volunteers of such board of trustees or community hospital, and such immunity as presently exists is specifically retained and recognized.
No reference is made under any subsection of § 41-13-11 or elsewhere to the existence of immunity for employees of community hospitals. Moreover, § 41-13-11(2) further provides that:

The board of trustees may likewise indemnify, either by the purchase of insurance or directly, where funds are available, in whole or in part, any trustee, officer, agent, volunteer or employee of a community hospital for actual personal expenses incurred in defense of any suit, or judgments resulting from said suit, brought against said trustee, officer, agent, volunteer or employee for alleged negligent or wrongful conduct committed while under the employment of or while providing service to said community hospital. (emphasis added).
Reading the plain language of the statute, we are compelled to ask why, if an employee were immune from suit or not subject to the waiver provisions of the statute, would the legislature grant the board of trustees of the community hospital the authority to indemnify the employee for personal expenses and/or a judgment resulting from the employee's negligence? In so providing for indemnification, the statute clearly anticipates that a judgment may well be rendered against an employee for his negligent or wrongful conduct.
Miss. Code Ann. § 41-13-11 expressly provides for the acquisition of liability insurance by boards and owners of community hospitals and waives immunity to the extent insurance is available to satisfy any judgment rendered. It is undisputed that Jones County Community Hospital carried such a policy. Thus, the hospital itself waived immunity to the extent of its liability coverage. The record is silent, however, as to whether Jones County Community Hospital also carried a liability policy for the benefit of its employees.
We find, therefore, that the circuit court, although for the wrong reason, correctly denied Sullivan's motion for summary judgment and that this case should be remanded to the circuit court for further proceedings.
AFFIRMED AND REMANDED TO THE CIRCUIT COURT FOR FURTHER PROCEEDINGS.
HAWKINS, C.J., DAN M. LEE and PRATHER, P.JJ., and SULLIVAN, PITTMAN, BANKS, ROBERTS and SMITH, JJ., concur.