**C–1, a Minor, by his Parent and Next Friend, P–1, et al., Plaintiffs,**

v.

**CITY OF HORN LAKE, MISSISSIPPI, et al., Defendants.**

**Civ. A. No. DC 88–116–D–O.**

United States District Court, N.D. Mississippi, Delta Division.

June 15, 1990.

Dismissed With Prejudice July 25, 1990.

Ronald W. Lewis, Oxford, Miss., for plaintiffs.

Gary Friedman, Susan D. Fahey, Jackson, Miss., William F. Myers, Mary Austin Monteith, Hernando, Miss., for defendants.

## MEMORANDUM OPINION

DAVIDSON, District Judge.

The matter is before the court on cross-motions for summary judgment. Plaintiffs filed suit under 42 U.S.C. § 1983 alleging violations of the fourth, ninth, and fourteenth amendments to the United States Constitution as well as state law claims for assault and battery, false imprisonment and false arrest, malicious prosecution, and violations of the Mississippi Constitution. Defendants are the City of Horn Lake, Mississippi, Chief of Police Michael Philley ("Chief Philley"), individually, and Mayor Sam Dye ("Mayor Dye"), individually.

### FACTS

On May 18, 1987, two students at the Horn Lake Middle School participated in a fight in a privately owned field near the school. The Horn Lake Police Department received a telephone call reporting the fight. Chief Philley and officers Danny Sowell and Jimmy Robertson immediately drove to the field. Chief Philley and Officer Sowell were in one patrol car and Officer Robertson was in another patrol car. When the policemen arrived at the school, a teacher pointed toward the field. When the officers arrived at the field, there were numerous children gathered around watching the fight. As the patrol cars approached, the children began dispersing, some running toward the woods. Chief Philley spoke to the children through an amplified speaker and warned the children to stop running and come back to the area where the policemen were. Some of the children stopped, but some kept running through the woods and eventually came out of the woods on Hurt Road.

While he was at the field, Chief Philley contacted the dispatcher to request the fire

department's assistance in transporting the children to the police department. The children [1] gave their names to the police at the field. They were then transported to the police station. Other children were picked up by Officer Ben Twitchell as they came out of the woods onto Hurt Road. They too were transported to the police station. Two other children, C–2A and C–3 were picked up by two firemen at the railroad tracks near the school. C–2B, C–2A's younger brother, was picked up by the firemen at the Discount Market store while he was inside the store. All three children were transported to the police station. The firemen's testimony indicates that someone from the police department gave them orders to pick up children in the vicinity of the field. Fireman Turner also testified that a police officer told Turner that he believed some of the children had gone into the Discount Market store. However, Fireman Turner could not identify that policeman.

When the children arrived at the station, they were detained together in a small room. They were later taken to a courtroom where they each were required to give their names, their parents' names, and their parents' places of employment. An officer asked if any of the children had been arrested before. The officer filled out a Juvenile Summons and Arrests Form on those children that answered in the affirmative, charging them with inciting a riot. The remaining children's names were forwarded to the Youth Court on a charge of disorderly conduct. The length of each child's detention varies, but the range was approximately from two to four hours. The parents eventually received letters from the Youth Court which stated that the charges would not be pursued in Youth Court as they had no basis in fact.

During the period of detention, Chief Philley noticed a vulgarity written in the dust on his patrol car. When no one admitted to writing the vulgarity, Chief Philley ordered the children that had been standing near the car to wash it. Before the deten-

tion was over, many of the children were made to wash several police cars and an ambulance. The car washing took place in view of passersby and the news media, although the children's faces were not filmed.

Eleven of the children filed suit in the case *sub judice*. Some of them were picked up at the field, some of them were picked up on Hurt Road, two of them were picked up at the railroad tracks near the school, and one was picked up at the Discount Market Store. The fighters at the field are not plaintiffs in this case.

## SUMMARY JUDGMENT STANDARD

Summary judgment should only be granted when there are no genuine issues of material fact and one party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The moving party must present its basis for the motion after which the non-moving party then has a duty to present enough evidence to create a factual dispute. *Celotex v. Catrett Corp.*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If there is sufficient evidence before the court that would allow a jury to return a verdict for the non-moving party, the motion for summary judgment must be denied. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 212 (1986).

Rule 56 requires the non-moving party to establish the existence of all the elements essential to the cause of action as to which the non-moving party has the burden of proof at trial. *Celotex*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53, 91 L.Ed.2d at 273.

[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concern-

---

**1.** Although some of the plaintiffs are mentioned by name in the motions and briefs, the court will use their official numerical designation to protect their anonymity.

ing an essential element of the non-moving party's case renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof. *Id.* The moving party is under no obligation to support its motion with affidavits or other evidence to negate the non-moving party's claim, but is only obligated to inform the court of the basis for its motion and identify the relevant evidence that demonstrates the lack of a genuine issue of material fact. *Id.* at 323, 106 S.Ct. at 2552, 91 L.Ed.2d at 274.

## CONSTITUTIONAL CLAIMS

### I. FOURTH AMENDMENT

A. All plaintiffs except C–2A, C–3, and C–2B

Plaintiffs' fourth amendment claim is that their arrests and detention were unconstitutional because the defendants lacked probable cause to make the arrests.[2] "Probable cause for arrest exists 'when the facts and circumstances within the knowledge of the arresting officer and of which he has reasonably trustworthy information are sufficient in themselves to warrant in a person of reasonable caution the belief that an offense has been or is being committed.'" *United States v. Fortna,* 796 F.2d 724, 739 (5th Cir.), *cert. denied,* 479 U.S. 950, 107 S.Ct. 437, 93 L.Ed.2d 386 (1986) (citations omitted). In § 1983 cases where there is no conflict in the evidence, the determination of probable cause is one the court should make. *Garris v. Rowland,* 678 F.2d 1264, 1270 (5th Cir.1982), *cert. denied sub nom., City of Fort Worth v. Garris,* 459 U.S. 864, 103 S.Ct. 143, 74 L.Ed.2d 121 (1982). However, if the facts relied upon to show probable cause are in conflict, then the issue should be submitted to the jury. *Id.* at 1270. *See also Canfield v. Chappel,* 817 F.2d 1166, 1168 (5th Cir.1987); *Hindman v. City of Paris,* 746 F.2d 1063, 1069 (5th Cir.1984). Most of the plaintiffs were charged with disorderly conduct, but three of them were charged with inciting a riot. Defendants argue that the arrests did not violate the fourth amendment because the defendants had probable cause to arrest all the plaintiffs present at the field for trespassing and inciting a riot.[3] The Fifth Circuit has held that:

> [T]he legality of an arrest may be established by proving that there was probable cause to believe that the plaintiff had committed a crime other than the one with which he was eventually charged, provided that the "crime under which the arrest is made and [the] crime for which probable cause exists are in some fashion related."

*Gassner v. City of Garland, TX,* 864 F.2d 394, 398 (5th Cir.1989) (quoting *Trejo v. Perez,* 693 F.2d 482, 485 (5th Cir.1982) (quoting *United States v. Atkinson,* 450 F.2d 835, 838 (5th Cir.1971), *cert. denied,* 406 U.S. 923, 92 S.Ct. 1790, 32 L.Ed.2d 123 (1972) (quoting *Mills v. Wainwright,* 415 F.2d 787 (5th Cir.1969)). In other words, there must be a nexus between the crime charged and the crime for which probable cause exists. *Gassner,* 864 F.2d at 398.

**2.** Chief Philley stated in his deposition that he did not believe the plaintiffs were ever under arrest. Although defendants did not argue that point in their briefs relative to the current motions, the court notes that the crucial question is whether the plaintiffs were unreasonably seized in violation of the fourth amendment. A seizure occurs when in view of the circumstances, a reasonable person would believe that he was not free to leave the premises. *United States v. Mendenhall,* 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497, 509 (1980). The court has no trouble in concluding that plaintiffs were seized. It is clear that the plaintiffs were detained against their will; they were not free to go as the testimony of all parties indicates. A

fourth amendment seizure occurred. The crucial question is whether that seizure was supported by probable cause.

**3.** Some of the alleged misdemeanor offenses did not occur in the presence of the officers, but the Mississippi statute that requires a misdemeanor be committed in the presence of the arresting officer for a valid arrest, Miss.Code Ann. § 99–3–7, is not a constitutional requirement. *Street v. Surdyka,* 492 F.2d 368, 371–72 (4th Cir.1974). Despite plaintiffs' assertion to the contrary, the Fifth Circuit has not yet reached that "difficult question." *Canfield,* 817 F.2d at 1169 n. 1.

The question can be answered "by asking only whether the conduct that served as the basis for the charge for which there was no probable cause could, in the eyes of a similarly situated officer, also have served as the basis for a charge for which there was probable cause." *Trejo*, 693 F.2d at 486.

■ Plaintiffs contend that no sufficient nexus exists between the offense of disorderly conduct and the offense of trespassing, the offense for which defendants claim probable cause existed. The court agrees. The location where plaintiffs' behavior occurred is unimportant. The elements of trespassing and disorderly conduct/inciting a riot are not similar in nature and the court sees no logical nexus between the offenses. In essence, defendants ask the court to validate arrests on the basis that probable cause existed to make an arrest for the unrelated charge of trespassing. Taken to its logical limit, any arrest could later be validated if it occurred on property not belonging to the defendant. To rule in such a manner would violate the teachings of Fifth Circuit precedent. Therefore, defendants will be prohibited from arguing that the arrests were legal because there was probable cause to arrest for trespassing.

■ However, the defendants will be permitted to argue that probable cause existed to arrest the plaintiffs at the field and on Hurt Road for inciting a riot. The court concludes that a sufficient nexus exists between the charges of inciting a riot and disorderly conduct to allow such an argument. Inciting a riot is a part of the disorderly conduct statutes. *See* Miss.Code Ann. § 97–35–3.[4] The conduct for which plaintiffs were charged could conceivably have formed the basis for an arrest for inciting a riot. Therefore, defendants will be permitted to present that argument to the jury as to those defendants that had been at the field. Determining what the police officers knew at the time of the arrests and whether it amounted to probable cause will be a jury function.

## B. Plaintiffs C–2A, C–3, and C–2B

■ As to the three plaintiffs arrested away from the field, C–2A, C–3, and C–2B, the facts are not disputed. C–2A and C–3 were arrested at the railroad tracks near the school by two firemen. The firemen had been instructed by someone at the police department to arrest all children in and around the Discount Market store.[5] The firemen admitted that they had no personal knowledge that constituted probable cause to pick up the plaintiffs, but did so on orders from the police department.

One reason articulated for believing that these three plaintiffs had committed disorderly conduct or incited a riot was that a police officer told one of the firemen that there might be children from the field in the Discount Market store. The fireman could not identify the policeman, however. But even if a policeman did make that statement, it is not enough to establish probable cause to pick up C–2B. There is no evidence that the Discount Market store was visible from the field or that any police officer had reason to believe that C–2B ran from the field to the store. No police officer claims to have seen C–2B or any plaintiffs enter the store or go to the railroad tracks from the field. Another reason the fireman gave for picking up the plaintiffs is that they were breathing hard. That is simply insufficient reason to pick children up on disorderly conduct charges. There is no particularized suspicion as required by the fourth amendment regarding these three plaintiffs. Chief Philley, in his deposition, admitted that there was not probable cause to pick the children up. The court finds and so rules that as a matter of law, there was not probable cause to "pick up" or detain either C–2A, C–3, or C–2B. Consequently, those three plaintiffs are entitled to a grant of partial summary judgment that their fourth amendment rights

---

4. Although defendants do not specify the statute they rely on pertaining to the inciting a riot charge, the court assumes that their reliance is upon § 97–35–3.

5. One of the firemen, Rodney Turner, testified at his deposition that he believed that the orders were confirmed by Chief Philley.

have been violated. Whether or not Chief Philley caused that violation remains to be proved.

## II. FOURTEENTH AMENDMENT

### A. Car Washing

■ Chief Philley noticed a single profanity written in the dust on his car when he arrived at the police station with four of the children. No one admitted writing the word, so Chief Philley made several children wash that car and several others, as well as an ambulance.[6] Five of the plaintiffs [7] were forced to wash cars. This exercise was performed in full view of passersby and the news media.

Plaintiffs, as pre-trial detainees, are protected by the due process clause of the fourteenth amendment. *Bell v. Wolfish*, 441 U.S. 520, 536 n. 16, 99 S.Ct. 1861, 1872 n. 16, 60 L.Ed.2d 447, 466 n. 16 (1979). "Due process prohibits the punishment of a person prior to an adjudication of guilt." *Van Cleave v. United States*, 854 F.2d 82, 84 (5th Cir.1988) (citing *Bell*, 441 U.S. at 535, 99 S.Ct. at 1872.) While the Constitution is not concerned with de minimis violations, *Ingraham v. Wright*, 430 U.S. 651, 674, 97 S.Ct. 1401, 1414, 51 L.Ed.2d 711, 732 (1977), "punishment" of pre-trial detainees is prohibited. *Van Cleave*, 854 F.2d at 84. Regulatory restraints incident to detention are permissible, but they must be reasonably related to a legitimate goal. *Id.* "Whether a detention measure constitutes a permissible regulatory restrain or an impermissible punishment turns on the intention of the jail officers." *Id.*

The court cannot articulate a legitimate goal to which to car washing was reasonably related and the defendants have not offered one. Defendants argue that the violation was de minimis because some of the plaintiffs testified that they were not harmed by it. Plaintiffs' testimony indicates that no physical harm occurred due to the alleged violations. However, some of the plaintiffs testified to humiliation and embarrassment from having to wash cars. Such harm is compensable. *See Baskin v. Parker*, 602 F.2d 1205, 1209 (5th Cir.1979). Therefore, the court concludes that the violation was not de minimis considering plaintiffs' ages and the fact that the exercise took place in view of passersby on the street and the news media. Since there are no genuine issues of material fact, the court concludes that the five aforementioned plaintiffs are entitled to partial summary judgment that their fourteenth amendment rights were violated by being forced to wash cars.[8]

### B. Malicious Prosecution

■ "There is a constructive right to be free of 'bad faith prosecution.'" *Hand v. Gary*, 838 F.2d 1420, 1424 (5th Cir.1988). The Fourteenth Amendment imposes a duty upon prosecutors to "charge only upon ascertaining probable cause." *Wheeler v. Cosden Oil & Chemical Co.*, 734 F.2d 254, 260 (5th Cir.1984). Maliciously instituting or initiating charges against someone is actionable under Section 1983. *Id.* Although the parties do not address the issue, the court assumes that the elements of malicious prosecution under federal law and Mississippi law are similar. Under Mississippi law, plaintiffs must prove the following: (1) the institution or continuation of either civil or criminal proceedings by or at the behest of defendants; (2) termination of such proceedings in plaintiffs' favor; (3) malice in instituting the proce-

---

**6.** In his deposition, Chief Philley testified that some of the car washing may have been voluntary, but defendants do not argue that position in their briefs relative to the current motions. At any rate, all five plaintiffs testified in their depositions that they were made to wash the cars. Other police officers and firemen who were guarding the children testified that the children were not free to go and that if they had stopped washing the cars, the officers would have reported them to Chief Philley. Additionally, Chief Philley did not identify any of the children that "volunteered" for the car washing exercise. The court is of the opinion that a reasonable juror could not believe that the car washing was voluntary.

**7.** The five plaintiffs were C–5; C–9; C–4; C–2A; and C–11.

**8.** The court's understanding of plaintiffs' brief is that no fourteenth amendment claim is asserted for the cramped confinement and alleged verbal abuse during the detention.

dure; (4) want of probable cause for the proceedings; and (5) the suffering of damages as a result of the action or prosecution complained of. *Royal Oil Co. v. Wells*, 500 So.2d 439, 442 (Miss.1986); *Gaylord's of Meridian, Inc. v. Sicard*, 384 So.2d 1042, 1043 (Miss.1980). Plaintiffs allege that referring some of plaintiffs to the Juvenile Court and filling out Juvenile Summons and Arrests forms on the remaining plaintiffs violates their Fourteenth Amendment rights, if there was not probable cause to charge them. The court agrees, provided that plaintiffs prove that the defendants acted with malice. In the case *sub judice*, plaintiffs have not shown the court any evidence indicating that malice played any part in Chief Philley's actions. There is no evidence that he knew any of the children involved or acted with the intent to cause harm to any of them. The court cannot infer malice from defendant's act of charging plaintiffs with crimes or every institution of criminal charges where the existence of probable cause is doubtful would give rise to a claim of malicious prosecution. Since plaintiffs failed to present any evidence to establish the existence of an element of a claim upon which they bear the burden of proof at trial, the court will grant Chief Philley's motion for summary judgment on the malicious prosecution claim under the fourteenth amendment.

## MUNICIPAL LIABILITY

A municipality may be sued under section 1983 only if it is "alleged to have caused a constitutional tort through 'a policy statement, ordinance, regulation or decision officially adopted and promulgated by that body's officers.'" *Praprotnik v. City of St. Louis*, 485 U.S. 112, 121, 108 S.Ct. 915, 922, 99 L.Ed.2d 107, 116 (1988) (quoting *Monell v. New York City Department of Social Services*, 436 U.S. 658, 690, 98 S.Ct. 2018, 2035, 56 L.Ed.2d 611 (1978)). Plaintiffs bear the burden of proving the existence of such a municipal policy. *Praprotnik*, 485 U.S. at 129, 108 S.Ct. at 926, 99 L.Ed.2d at 121.

The single act of a policymaker can be "policy" of the municipality. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480, 106 S.Ct. 1292, 1298, 89 L.Ed.2d 452 (1986) (plurality). A policymaker is one who has the final authority to make a choice and makes a choice between several alternatives. *Id.* at 484, 106 S.Ct. at 1300. Whether an official has final policymaking authority is a question of state law, *Praprotnik*, 485 U.S. at 123, 108 S.Ct. at 923, 99 L.Ed.2d 107, and one "to be resolved by the trial judge before the case is submitted to the jury." *Jett v. Dallas Indep. School Dist.*, 491 U.S. 701, 738, 109 S.Ct. 2702, 2724, 105 L.Ed.2d 598, 628 (1989). "The trial judge must identify those officials or governmental bodies who speak with final policymaking authority for the local governmental actor concerning the action alleged to have caused the particular constitutional or statutory violation at issue." *Id.* The judge should base his decision on state and local law and customs and usages that have the force of law. *Id.*

Plaintiff argues that the city is liable under several theories: 1) that the city's policy of arbitrary and capricious prosecution of juveniles caused the violation; (2) that Mayor Dye is a policymaker regarding this issue; and that (3) Chief Philley is a policymaker regarding this issue. The court will address the issues in reverse order.

### A. Chief Philley

Section 21–21–1 of Mississippi Code Annotated states that "the marshal or chief of police shall be the chief law enforcement officer of the municipality and shall have control and supervision of all police officers employed by said municipality." Furthermore, Chief Philley testified that he is in charge of everything that happens in the police department. Philley Dep. p. 34. He also admitted that he was in charge of the operation at issue in this case. The job description for chief of police states that the chief has the authority to prescribe, promulgate, and enforce departmental rules and regulations. P. Exhibit 17. Philley Dep. p. 34. Defendants

argue that a sentence in Section 21–19–15[9] of the Mississippi Code Annotated gives final policymaking authority to the city council.

However, defendants do not present facts which show that the city council exercised control over law enforcement decisions, or that such authority was not delegated to the chief of police. In light of the testimony of Chief Philley regarding the discretion vested in him and his command of the instant operation, the court does not find that § 21–19–15 places law enforcement decisions within the purview of the city council. Instead, the court is of the opinion that Chief Philley was a "policy-maker" with regard to law enforcement decisions. *See Marchese v. Lucas*, 758 F.2d 181, 189 (6th Cir.1985), *cert. denied*, 480 U.S. 916, 107 S.Ct. 1369, 94 L.Ed.2d 685 (1987). However, there are genuine issues of material fact regarding whether he made the decisions to refer the children to Juvenile Court and to pick up the children on Hurt Road, at the railroad tracks, and at the store. Furthermore, the court is unable to discern whether Chief Philley made the decision to force all the plaintiffs to wash cars. The jury must decide whether Chief Philley, as the "policymaker," made those decisions. The court notes that even if Chief Philley did not authorize any of the actions, the city may still be liable if plaintiffs can prove that he ratified the decisions and the bases for them. *Praprotnik*, 485 U.S. at 127, 108 S.Ct. at 926. Those are questions for the factfinder.

**B. Mayor Dye**

■ Plaintiffs assert that Mayor Dye's intervention in the police department's daily operations and the disciplinary actions he took against policemen render him a policymaker. Although Mayor Dye did not make the decision to arrest and detain the children, plaintiffs claim that he ratified the decision. But ratification by Mayor Dye can render the city liable only if Mayor Dye has final policymaking authority with re-

spect to the decisions to arrest, detain, or prosecute individuals. Plaintiffs have presented evidence that Mayor Dye had the power to control who was charged with crimes and who was not. Moreover, plaintiffs have presented evidence of and may be able to show that Mayor Dye routinely used his power in regard to law enforcement decisions to such an extent that it had the "force of law." *Jett*, 491 U.S. at 738, 109 S.Ct. at 2724, 105 L.Ed.2d at 628. The court cannot determine from the evidence presented whether Mayor Dye was a "policymaker" with regard to the matters at issue. Therefore, summary judgment cannot be granted on that issue.

**C. Policy of Selective Arrests**

■ Plaintiffs also claim that the city's alleged policy of "selective prosecution" caused the constitutional violations. The "selective prosecution" alleged is that juveniles with ties to city officials ("favored ones") are not arrested when they commit crimes while innocent juveniles with no ties to city officials are charged and detained without a determination of probable cause. In sum, the alleged policy is one of arbitrary arrests of juveniles. Plaintiffs have cited two examples of alleged arbitrary arrests of juveniles in violation of their constitutional rights. Also cited are examples of "favored ones" not being arrested on at least two occasions when probable cause to arrest them existed. Dates were not given, so the court is unable to tell how much time passed between the instances. The court is of the opinion that sufficient evidence has been presented to create a factual question of whether the city has a policy of arbitrarily arresting juveniles. Defendants cite *Hamilton v. Rodgers*, 791 F.2d 439, 443 (5th Cir.1986), which held that a dozen incidents within a two and one half year period was not enough to establish a persistent, widespread practice that constitutes a custom. However, that decision was made after a trial was conducted, not

9. The governing authorities of municipalities shall have power to make all needful police regulations necessary for the preservation of good order and peace of the municipality and to prevent injury to, destruction of, or interference with public or private property.

Miss.Code Ann. § 21–19–15 (1972).

on a motion for summary judgment. The court points out that plaintiffs must still prove that the policy caused the violations as required by *Praprotnik*, 485 U.S. at 122, 108 S.Ct. at 923.

## INDIVIDUAL LIABILITY

### A. Personal Liability

■ Individuals are not liable under Section 1983 unless they were personally involved in the complained of actions or there is some causal connection between their actions and the constitutional deprivation. *Hinshaw v. Doffer*, 785 F.2d 1260, 1263 (5th Cir.1986); *Douthit v. Jones*, 641 F.2d 345, 346 (5th Cir.1981). "In order to establish the personal liability of a given defendant, the plaintiff must show that a particular official's action (or inaction) caused a violation of plaintiff's rights." *Jackson v. Hollowell*, 714 F.2d 1372, 1377 (5th Cir.1983) (quoting *Williams v. Treen*, 671 F.2d 892, 900 n. 15 (5th Cir.1982)).

■ Of course, Chief Philley participated in and was in charge of the operation on May 18, 1988. Therefore, personal liability attaches. But Mayor Dye was not present when the plaintiffs were arrested, transported, held, questioned, punished, booked, or referred to Youth Court. Plaintiffs argue that Mayor Dye's later articulation of his general approval of the police department's action renders him personally liable. Plaintiffs have not submitted any cases and the court has not located any which hold that a subsequent opinion rendered on an action has any bearing on the causal connection issue sufficient to render an individual personally liable. Therefore, the court holds as a matter of law that Mayor Dye is not personally liable since there is no causal connection between his actions and the alleged constitutional violations.

### B. Qualified Immunity

■ Public officials, including police officers, enjoy a qualified immunity from suit in cases brought under 42 U.S.C. § 1983. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).

A determination of whether an official is protected by qualified immunity "generally turns on the 'objective legal reasonableness' of the action assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Anderson v. Creighton*, 483 U.S. 635, 639–40, 107 S.Ct. 3034, 3038–39, 97 L.Ed.2d 523, 530–31 (1987). A right is considered "well established" if the contours of the right are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* Therefore, Chief Philley is entitled to qualified immunity unless it was apparent to him from the information he possessed that he was violating the plaintiffs' "clearly established" constitutional rights. *Anderson*, 483 U.S. at 642, 107 S.Ct. at 3040, 97 L.Ed.2d at 532. The rights need not be clearly established by a precedent that is factually on "all fours." *Jefferson v. Ysleta Indep. School Dist.*, 817 F.2d 303, 305 (5th Cir.1987). Defendant should be aware of "general, well-developed legal principles." *Id.*

■ Plaintiffs' right to be arrested, detained and prosecuted only upon a showing of probable cause was "clearly established" on May 18, 1988. *See e.g., Wheeler*, 734 F.2d at 254; *Trejo*, 693 F.2d at 485; *Henry v. United States*, 361 U.S. 98, 100, 80 S.Ct. 168, 170, 4 L.Ed.2d 134 (1959); *Dennis v. Warren*, 779 F.2d 245, 247 (5th Cir.1985). Plaintiffs' rights, as pre-trial detainees to be free from "punishment" was also clearly established on May 18, 1988. *Bell*, 441 U.S. at 536 n. 16, 99 S.Ct. at 1872 n. 16. The pertinent questions then become 1) whether a reasonable officer who possessed the information that Chief Philley possessed could have concluded that there was probable cause to arrest plaintiffs for either disorderly conduct or inciting a riot, and 2) whether a reasonable officer could have believed that forcing plaintiffs to wash cars was not punishment forbidden by the Fourteenth Amendment.

#### 1. C–2A, C–2B, and C–3

The court has already stated that the arrests and detention of the three plaintiffs above violated the Fourth Amendment.

Chief Philley admitted in his deposition that there was not probable cause to arrest these three plaintiffs. Furthermore, defendant Philley has not set forth any facts known to him at the time the children were picked up which could form the basis for the existence of probable cause. Therefore, Chief Philley is not entitled to qualified immunity as to those three plaintiffs. However, Chief Philley's participation in the action must still be proved.

### 2. Remaining Plaintiffs

▮ Chief Philley maintains that he did not know the identity of the fighters on the day of the fight. Philley Dep. p. 15–16. Officer Robertson testified that he did not see the fighters as they drove up, but that he learned their identity later that day. Robertson Dep. p. 11. Certainly, if Chief Philley was under the belief that all the children at the field were fighting, he could have reasonably believed that they were committing the offense of disorderly conduct. *See* Miss.Code Ann. § 97–35–3(1)(b). If, however, it was apparent to Chief Philley that most of the children were only watching the fight, there was not probable cause to arrest them. The court finds no basis for their arrests under the Mississippi disorderly conduct statutes. *Id.* They were not on public property, nor were they threatening or interfering with other individuals. Therefore, what Chief Philley knew is a crucial factual question upon which the qualified immunity issue hinges. Because the court cannot tell from the facts presented whether Chief Philley is entitled to the defense, summary judgment must be denied and the issue preserved for trial. *See Thompson v. City of Starkville*, 901 F.2d 456 (5th Cir.1990); *Feagley v. Waddill*, 868 F.2d 1437, 1439 (5th Cir.1989).

### 3. Car Washing

▮ As previously discussed, the Supreme Court has held that persons who have not been adjudicated guilty cannot be punished. *Bell*, 441 U.S. at 536 n. 16, 99 S.Ct. at 1872 n. 16. Furthermore, the Fifth Circuit has restated that principle noting that regulatory restraints placed upon pretrial detainees must be reasonably related

to a legitimate goal. *Van Cleave*, 854 F.2d at 84. In light of this clearly established Supreme Court and Fifth Circuit precedent, the court concludes that a reasonable officer could not have concluded that forcing pre-trial detainees to wash patrol cars did not violate clearly established law. Therefore, Chief Philley is not entitled to qualified immunity regarding that claim.

### State Law Claims

### Municipal Liability

The City of Horn Lake argues that it is immune from any state law violations under traditional sovereign immunity principles. It is well settled under Mississippi law that a municipality is entitled to sovereign immunity unless statutory law expressly grants someone the authority to sue. *Strait v. Pat Harrison Waterway District*, 523 So.2d 36, 38 (Miss.1988). The grant of authority to sue must be clear and unambiguous. *Id.* Plaintiffs contend that the city waived its sovereign immunity by becoming a member of the Mississippi Municipal Liability Plan (MMLP), a nonprofit corporation. Plaintiffs rely on the following statute in support of their argument:

> Municipalities are hereby authorized, in the discretion of the governing authorities, to purchase general liability insurance coverage, including errors and omissions insurance for municipal officials and municipal employees.

> Nothing contained herein shall be considered as a waiver of immunity in whole or in part as to any governmental function attempted or undertaken by the municipality except that where the municipality has liability insurance coverage as to any action brought against it, then such action may be maintained against such municipality, but any recovery in such action shall be limited solely to the proceeds of any such liability insurance coverage and a judgment creditor shall have recourse only to the proceeds of such liability insurance coverage. Any judgment rendered in excess of the limits of such insurance shall, on motion of the court, be reduced as to the municipality

to the amount of said liability insurance coverage but not as to any joint tortfeasor, if any.

Miss.Code Ann. § 21–15–6 (Supp.1989). Plaintiffs argue that the city has waived its immunity to the extent of its coverage under the MMLP. The city's position is that: (1) MMLP membership is not a purchase of general liability insurance under § 21–15–6 and (2) even if the MMLP membership is considered insurance, plaintiffs' claims are not covered by the insurance.

■ In deciding questions of state law, this court must apply the law as the Mississippi state courts would apply it. *Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). It is the court's duty to view itself as an inferior state court and to make a decision that it thinks a state court would reach. *Jackson v. Johns-Manville Sales Corp.,* 781 F.2d 394, 396–97 (5th Cir.1986), *cert. denied,* 478 U.S. 1022, 106 S.Ct. 3339, 92 L.Ed.2d 743 (1986); *Di Pascal v. New York Life Ins. Co.,* 749 F.2d 255, 260 (5th Cir.1985). In the absence of specific guidance from the Mississippi Supreme Court, a federal district court must look to the following criteria in making an *Erie*-guess: 1) lower state court decisions in Mississippi and Supreme Court dicta; 2) the general rule on the issue; 3) the rule in other states looked to by Mississippi courts when they formulate the substantive law of Mississippi; and 4) other available legal sources, such as treatise and law review commentaries. *Jackson,* 781 F.2d at 397 (citing *Guarantee Trust Co. v. York,* 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945); 19 C. Wright, A. Miller, & E. Cooper, *Federal Practice and Procedure,* § 4507; 1 A.J. Moore, *Moore's Federal Practice,* para. 0.309[2] ).

■ The issue of whether membership in a plan such as MMLP constitutes the purchase of liability insurance has not been addressed by the Mississippi Supreme Court. Plaintiffs submitted decisions from Mississippi circuit courts which specifically hold that membership in the MMLP is not a purchase of general liability insurance under § 21–15–6. *Molden v. City of Moss Point,* No. 89–5118(3) (Circuit Court of Jackson County May 31, 1990); *Webb v. Jackson,* No. 6313 (Circuit Court of Newton County Feb. 9, 1990); *Dean v. Town of Moorehead,* No. 13,666 (Circuit Court of Sunflower County Feb. 1, 1990). Defendant also presented a case decided by the Illinois Supreme Court which held that a municipality's participation in a risk management pool was not a waiver of the municipality's sovereign immunity based on a state statute similar to § 21–15–6. *Antiporek v. Village of Hillside,* 114 Ill.2d 246, 102 Ill.Dec. 294, 499 N.E.2d 1307 (1986). The court noted that making contributions to the pool was not like making premium payments to a private insurance company which would enjoy a windfall if the city was entitled to a sovereign immunity defense.

The by-laws of the MMLP state that the purpose of contributing to the fund is "to create a reserve fund for the payment of claims which are not insured and which are not covered by immunity.... It is not intended that any immunity ... is waived by the creation of such reserves...." Given the state purpose of the city's membership, the express disclaimer of waiver, and the arguments presented by the persuasive authority, the court makes an *Erie* guess that the Mississippi Supreme Court would conclude that the city's membership in the MMLP did not waive its sovereign immunity as to plaintiffs' state law claims. The reserves are not premium payments and were not intended to cover claims such as plaintiffs claim. Therefore, the court holds that the city is not liable for the alleged state law violations.

### *Individual Liability*

■ To hold a defendant liable for false imprisonment through false arrest, plaintiffs must prove that the defendant personally and actively participated in the arrest, directly or indirectly. *Sunshine Jr. Food Stores v. Aultman,* 546 So.2d 659, 662 (Miss.1989) (quoting *Smith v. Patterson,* 214 Miss. 87, 93, 58 So.2d 64, 66 (1952)). There are no facts pointing to any direct or indirect participation of Mayor Dye in the decision to pick up or detain the plaintiffs.

Therefore, he is entitled to summary judgment on the false imprisonment and false arrest claims.

■ Assault is "an intentional placing of another in reasonable apprehension of receiving an immediate battery." *Hart v. Walker*, 720 F.2d 1436, 1440 (5th Cir.1983) (quoting Perkins, *Criminal Law* § 2 (2d ed. 1969)). "Mere words without the threat of physical violence are insufficient." *Hart*, 720 F.2d at 1440 (applying Mississippi law). A police officer's action of putting a hand on his gun accompanied by an expression of his "vexed discontent" can constitute an assault if the victim is placed in apprehension of receiving an immediate battery. *Id.*

Plaintiffs contend that an unlawful arrest automatically constitutes a civil assault. However, plaintiffs do not cite any controlling authority for that position and the court discovered none in its own research. In the opinion of the court, plaintiffs must present evidence that they were placed in apprehension of an immediate battery or offensive touching to prevent the court from granting defendant's motion for summary judgment. Plaintiffs have met that burden. There is evidence in the record that a police officer said to a laughing child in the presence of approximately 20 other children, "You're not going to think it's too funny if I step on your head with my boots." C–9 Dep. p. 22. That same testimony also states that the child stopped laughing. There is an inference that the child was apprehensive of an immediate battery occurring. The other unidentified 20 children might well have been placed in the same fear from that statement. Certainly, a factual question is presented as to whether individual plaintiffs were victims of an assault. At least one other case of assault allegedly occurred—Officer Twitchell told some of the plaintiffs to "either shut up or he would put the cuffs on [them] and thrown [them] in the car." C–8 Dep. p. 24.

Although an assault may have occurred, there is no evidence that Chief Philley or Mayor Dye committed an assault. The chief of police is not liable for the actions of his officers "unless he was present or unless he directed the acts or personally cooperated in them." *Anderson v. Nosser*, 438 F.2d 183, 199 (5th Cir.1971) *modified en banc on other grounds*, 456 F.2d 835 (5th Cir.1972), *cert. denied*, 409 U.S. 848, 93 S.Ct. 53, 34 L.Ed.2d 89 (1972) (quoting *Jordan v. Kelly*, 223 F.Supp. 731, 739 (W.D.Mo.1963)). Since no evidence was presented regarding either Chief Philley or Mayor Dye's participation in or presence during an assault, they are entitled to summary judgment on that issue.

■ Although Chief Philley may have actively participated in the alleged false arrest and some of the other alleged violations, he is entitled to immunity on the state law claims. A public official is immune from a civil action for damages if "his breach of a legal duty causes injury and (1) that duty is ministerial in nature, or (2) that duty involves the use of discretion and the governmental actor greatly or substantially exceeds his authority and in the course thereof causes harm, or (3) the governmental actor commits an intentional tort." *Grantham v. Mississippi Department of Corrections*, 522 So.2d 219, 225 (Miss.1988). *See also Parker v. Mississippi Game & Fish Comm'n*, 555 So.2d 725, 732 (Miss.1989); *Hudson v. Rausa*, 462 So.2d 689, 696 (Miss.1984). The following test is used for determining whether an act is ministerial or discretionary in nature:

> The most important criterion ... is that if the duty is one that has been positively imposed by law and its performance required at a time an manner or upon conditions which are specifically designated, the duty to perform under the conditions specified not being dependent upon the officer's judgment or discretion, the act being discharged thereof is ministerial.

*Poyner v. Gilmore*, 171 Miss. 859, 158 So. 922, 923 (1935); *Marshall v. Chawla*, 520 So.2d 1374, 1375 (Miss.1988). If the preceding test is not met, then the act is presumed discretionary. *Marshall*, 520 So.2d at 1375. "The result has been a fairly broad application of the public official immunity principle in Mississippi." *Id.*

In the case *sub judice,* Chief Philley is entitled to the official immunity defense. All the decisions regarding the viable complained of actions—arrest, detention, and treatment of the children while they were at the police station—required Chief Philley to exercise his independent judgment and discretion. None of the actions were required by law to be performed. Neither were the actions wilful or malicious nor did they substantially exceed the scope of Chief Philley's authority.[10] Consequently, Chief Philley is immune from suit regarding the state law claims.

## REMEDY

Plaintiffs argue that expungement of police records is a proper remedy when plaintiffs' fourth amendment rights are violated due to an arrest without probable cause. The court will not address that issue at this point since plaintiffs' motion for partial summary judgment only requested a ruling regarding defendants' liability, not the possible remedies.

## CONCLUSION

In sum, defendants' motion for summary judgment should be granted in part and denied in part. The motion should be denied as to defendants' § 1983 claims. However, the motion should be granted as to the claims based upon state law. Defendant Philley is not entitled to qualified immunity for the arrest and detention of C-2A, C-2B, and C-3 or for forcing plaintiffs to wash cars. A question of fact precludes the court from ruling on defendant Philley's claim to qualified immunity regarding the remaining arrests. Plaintiffs' cross-motion for partial summary judgment should also be granted in part and denied in part. Plaintiff's motion is granted only to the following extent: (1) C-2A, C-2B, and C-3's arrest and detention violated the fourth amendment and (2) the car washing requirement violated the fourteenth amendment. The remainder of plaintiffs' motion should be denied.

An order in accordance with this memorandum opinion will be issued. All briefs, exhibits, affidavits, and other matters considered by the court in granting summary judgment are incorporated into the record.

---

**10.** The allegation of assault should be dismissed against both Chief Philley and Mayor Dye for different reasons. *See supra* p. 952–953.