587 So.2d 918 (1991)
Linda Lafferty McQUEEN, INDIVIDUALLY, and as Mother and Next Friend of Brandon Lafferty McQueen
v.
Jean WILLIAMS, Administratrix of the Estate of David Earl Williams, Deceased.
No. 90-CA-0588.
Supreme Court of Mississippi.
October 16, 1991.
David H. Linder, Hamilton & Linder, Meridian, for appellant.
William E. Ready, Ready & Associates, Meridian, for appellee.
Before HAWKINS, P.J., and PRATHER and ROBERTSON, JJ.
PRATHER, Justice, for the Court:

I. INTRODUCTION
In this case, Brandon Lafferty McQueen, through his mother, filed a complaint in the Clarke County Circuit Court against the estate of the late Clarke County Sheriff David Earl Williams for $1.5 million. McQueen alleged that Sheriff Williams' negligence was responsible for the wrongful death of his father, who was murdered by Robert S. Minnick and James "Monkey" *919 Dyess after they escaped from the Clarke County Jail. On motion for summary judgment, Judge Robert W. Bailey ruled that the doctrine of qualified immunity shielded the Sheriff from any liability. McQueen now appeals this ruling. This Court affirms.

A. Facts and Procedural History
Due to overcrowded conditions at the State correctional institution at Parchman, Robert Minnick and James Dyess were being confined in the Clarke County Jail in Quitman. They escaped from this jail in April of 1986, and, before being apprehended, they murdered James Lafferty and Donald Thomas during a burglary of Thomas' mobile home. See Minnick v. State, 551 So.2d 77 (Miss. 1988), rev'd and remanded, Minnick v. Mississippi, ___ U.S. ___, 111 S.Ct. 486, 112 L.Ed.2d 489 (1990).
On April 18, 1988, Brandon Lafferty McQueen filed a complaint in the Clarke County Circuit Court against the estate of the late Clarke County Sheriff David Williams (hereinafter "Sheriff") for the wrongful death of his father, James Lafferty. In his complaint, McQueen alleged that the Sheriff should be held liable because: (1) the Sheriff "and/or his agents, servants and employees" knew that Minnick and Dyess "were dangerous, prone to escape, and likely to do serious bodily harm to others if allowed to escape;" (2) through the Sheriff's negligence or the negligence of his "his agents, servants and employees," Minnick and Dyess were allowed to escape from an "inadequately secured" jail; and (3) the Sheriff "and/or his agents, servants and employees" failed "to promptly and adequately inform other law enforcement authorities and the general public" of the escape. McQueen later amended the complaint with the following allegation: "Through his negligence, recklessness, and gross negligence," the Sheriff "and/or his agents, servants and employees" breached their ministerial duty to keep Minnick and Dyess confined "by leaving the jail door unlocked and thereby permitting [an] escape."[1]
On July 6, 1988, the Sheriff filed his answers to the original complaint and amended complaint. He denied McQueen's allegations, asserted various affirmative defenses including immunity and lack of duty owed to the victim, and moved for summary judgment. On December 14, 1988, after McQueen filed the original complaint, the Sheriff filed a "Motion for a Protective Order"  requesting that all discovery be stayed until the legal issue of immunity was decided during summary judgment proceedings. Judge Bailey granted the "Motion for a Protective Order," stayed all discovery, and then ordered the parties to "submit their position and arguments in the matter of Motion for Summary Judgment on briefs and that said positions and arguments shall be limited to the topical areas of the applicable immunities."
Upon reviewing the briefs, pleadings, and affidavits, Judge Bailey granted the motion for summary judgment after concluding that the Sheriff was shielded from liability under the doctrine of qualified immunity. McQueen appealed.

B. The Issues
In this appeal, McQueen presents three issues for disposition:
(1) Whether a sheriff owes a duty to the public to confine dangerous inmates who are prone to escape, and upon their escape, to notify area residents and other law enforcement agencies without unreasonable delay;
(2) Whether said duty is discretionary or ministerial in nature and, consequently, whether the sheriff enjoys a qualified immunity; and
(3) Whether the lower court erred in granting summary judgment in favor of *920 the Appellee after it denied the Appellants the right to conduct any discovery.

II. ANALYSIS OF ISSUES
This Court recognizes that this is an appeal from a summary judgment. The construction and enforcement of Rule 56 regarding summary judgment have been amply addressed in a plethora of cases and, for brevity's sake, will not be repeated in this opinion. See Palmer v. Biloxi Regional Medical Center, Inc., 564 So.2d 1346, 1354-55 (Miss. 1990).

A. Issue # 1: Whether the Sheriff Owes the Public a Duty to Keep Prisoners Confined?
Issue # 1 was not actually before Judge Bailey on motion for summary judgment.[2] However, Judge Bailey addressed it in his "Opinion on Motion for Summary Judgment" and concluded the Sheriff owed no duty to the public.[3]

B. Issue # 2: Whether the Sheriff Was Immune from Liability?

1.
Upon concluding that the Sheriff owed no duty to the public, Judge Bailey wrote the following:
Even if there was a duty to keep the prisoners confined, the particular practices, methods and day to day operational functions necessary to maintain a jail and to hold inmates and not "allow them to escape" is based entirely upon the Sheriff's personal deliberation, decision and individual judgment, and not on any particular specifically designated mechanical duty. Such decisions are based on the inmates' conduct in the jail, the Sheriff's information about the inmate's habits, customs and plans, the funds available and the condition of the physical plant, the Sheriff's available facts for conducting searches, and the Sheriff's information in dealing with possible panic caused by publicity surrounding escaped prisoners. The state law and the affidavits provided by the Defendant clearly establishes that the deceased Sheriff's actions, as done in the totality of circumstances, were totally discretionary. There were no affidavits submitted by the Plaintiff to the contrary on this point.
Plaintiff relies on Hudson v. Rausa, 462 So.2d 689 (Miss. 1984) which stated that the defense of qualified immunity will not lie when the Defendant has "substantially exceeded his authority." The Court is of the opinion that the Plaintiff has stated no facts which indicate that the Sheriff did exceed his authority. The Court in relying on Grantham v. Department of Corrections, 522 So.2d 219 (Miss. 1986 [1988]), referring to Rausa stated that public officials, such as Sheriff Williams, lose qualified immunity only when they substantially exceed their authority and commit willful wrongs or malicious acts under color of office. The Court is of the opinion that there are no such facts nor inferences raised in Plaintiff's Amended Complaint that would substantiate this allegation.
The Court is of the opinion and so finds that the Defendant Sheriff is protected from discovery, trial and liability by qualified immunity and that the Motion for Summary Judgment will be granted.
McQueen contends that the judge's decision is erroneous and that the Sheriff should not be protected under the doctrine of qualified immunity since his duties are ministerial in nature. McQueen simply explains: (1) that under statutory law, the Sheriff was duty-bound to "keep his prisoners confined;" (2) that "[t]his duty is ministerial *921 in nature;" and (3) that his failure to keep Minnick and Dyess confined renders him liable for their tortious acts.
The Sheriff counters that he owed no duty, or, assuming arguendo he owed a duty, this duty is clearly discretionary in nature  not ministerial. He explains:
[T]he particular practices, methods and day to day operational functions necessary to maintain a jail and to hold inmates and not "allow them to escape," is based entirely upon the Sheriff's personal deliberation, decision and individual judgment, and not on any particular specifically designated duty. Such decisions are based on:
a. The inmate's conduct in the jail;
b. The Sheriff's information about the inmate's habits, customs and plans;
c. The funds available and the condition of the physical plant;
d. The Sheriff's available facts for conducting searches; and
e. The Sheriff's information in dealing with possible panic caused by publicity surrounding escaped prisoners.
The state law and the affidavits submitted by [McQueen] clearly establish that the Sheriff's actions, as done in the totality of circumstances, were totally discretionary. As was pointed out in the Opinion by the lower court, "There were no affidavits submitted by the Plaintiff to the contrary on this point."
The Sheriff adds that the doctrine of qualified immunity shields from liability governmental officials who, like himself, must use their discretion in the performance of their legal duties.

2.
This Court has provided instruction on matters involving the issue of qualified immunity:
The immunity of a public official is limited, not an absolute immunity. Since the purpose of the immunity is to protect the official in his decision-making role, we have held that immunity will not apply unless the action involves a discretionary decision-making process. Phrased otherwise, if the action is merely ministerial, there is no immunity.
Davis v. Little, 362 So.2d 642, 644 (Miss. 1978), quoted in Region VII, Mental Health v. Isaac, 523 So.2d 1013, 1016 (Miss. 1988). In distinguishing between duties which are ministerial in nature and those which are discretionary, this Court has explained:
"The most important criterion, perhaps, is that (if) the duty is one which has been positively imposed by law and its performance required at a time and in a manner or upon conditions which are specifically designated, the duty to perform under the conditions specified not being dependent upon the officer's judgment or discretion," the act in discharge thereof is ministerial.
Poyner v. Gilmore, 171 Miss. 859, 865, 158 So. 922, 923 (1935) (citing and quoting various treatises and cases). And finally, this Court has cautioned that qualified immunity is not impenetrable:
The public officials of this state ... lose th[eir] immunity ... when they substantially exceed their authority and commit wrongs under color of office. They have no immunity where they commit wilful wrongs or malicious acts.
Hudson v. Rausa, 462 So.2d 689, 696 (Miss. 1984) (citing cases).
Our law thus directs that a governmental official has no immunity to a civil action for damages if his breach of a legal duty causes injury and (1) that duty is ministerial in nature, or (2) that duty involves the use of discretion and the governmental actor greatly or substantially exceeds his authority and in the course thereof causes harm, or (3) the governmental actor commits an intentional tort. Beyond that, a government official has no immunity when sued upon a tort that has nothing to do with his official position or decision-making function and has been committed outside the course and scope of his office.
Grantham, 522 So.2d at 225; see MISS. CODE ANN. § 11-46-9(c) (1990 Supp.) ("A governmental entity and its employees acting within the course and scope of their *922 employment or duties shall not be liable for any claim ... [b]ased upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee thereof, whether or not the discretion be abused."); see also Grantham v. Dep't of Corrections, 522 So.2d 219, 223 n. 2 (Miss. 1988) (Construing § 11-46-9(c), this Court noted that "the discretionary/ministerial dichotomy relates to suits against officials, not the agencies or departments they serve.").

3.
Applying the foregoing law to the case sub judice, the Sheriff's duties are deemed to be discretionary in nature and, as a consequence, he is entitled to the protection of qualified immunity. Indeed, McQueen cited no guideline or procedure  statutory or otherwise  to show that the Sheriff's decision-making in the performance of his duties involves no discretion. The statutes which McQueen did cite merely directed the Sheriff to "safely keep in the jail of his county all persons committed by order of [the] courts." MISS. CODE ANN. § 19-25-35 (1972); see also id. §§ 19-25-69 & 19-25-71 (1972) & 97-9-39 (1990 Supp.). Instead, these statutes relegate to all sheriffs the power of "personal deliberation, decision, and judgment" in the performance of their duties. Davis, 362 So.2d at 643 (quoting PROSSER, LAW OF TORTS § 132 (4th ed. 1971)). Such power of discretion entitles a sheriff to qualified immunity so long as he does not substantially exceed his authority or commit an intentional tort. Grantham, 522 So.2d at 225, citing Hudson, 462 So.2d at 696.
In sum, the Sheriff is entitled to the protection of qualified immunity. This Court therefore affirms on this issue.

C. Issue # 3: Whether Discovery Was Properly Stayed?

1.
McQueen filed his complaint on April 18, 1988. Approximately six months later, the Sheriff filed his motion for a protective order on December 14, 1988, alleging immunity from suit which potentially would be dispositive of the entire cause of action. Additionally, the Sheriff asserted that the control of discovery was clearly a function of the Court and that the claimed immunities protect from the burden and expense of discovery as well as trial. Allowance of discovery procedures to plaintiff, under these facts, would violate the spirit and content of the Court's rules, create potential waste, subject defendant to undue interference, expense and burden, and be inequitable under the circumstances.
McQueen responded reasserting the alleged facts of the complaint, but recognizing that this motion was clearly within the Court's discretion and the authority of the Court pursuant to Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); Mitchell v. Forsyth, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985); Malley v. Briggs, 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986); and Anderson v. Creighton, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) and their progeny. Those cases specifically state that the official's immunity is an "immunity from judgment, trial and discovery", as same is necessary to protect officials from vexatious lawsuits. On January 10, 1989, the judge granted the Sheriff's motion, issued the protective order, and stayed all discovery until disposition of the immunity issue during summary judgment proceedings. Dissatisfied with this order, McQueen filed an affidavit averring that the facts material to plaintiffs' cause of action concerning the liability of defendant were known only to hostile witnesses and witnesses identified and in close association with the defendant, and that the plaintiffs were therefore unable to procure affidavits to oppose defendant's affidavits. McQueen filed the affidavit pursuant to Miss.R.Civ.P. 56(f).[4]
Notwithstanding McQueen's affidavit, the judge granted the Sheriff's motion for *923 summary judgment. In his "Opinion on Motion for Summary Judgment," the judge explained his decision to stay discovery:
This Court granted the Defendant's Motion to Stay Discovery under Harlow v. Fitzgerald, 457 U.S. 800 [, 102 S.Ct. 2727, 73 L.Ed.2d 396] (1982) which stated that a defendant is entitled to a stay of discovery pending the determination of whether qualified immunity is applicable. Harlow has been followed in numerous other cases namely, Mitchell v. Forsyth, 472 U.S. 511 [, 105 S.Ct. 2806, 86 L.Ed.2d 411] (1985), Anderson v. Creighton, [483 U.S. 635] 107 S.Ct. 3034 [, 97 L.Ed.2d 523] (1987); Ellilot v. Perez, 751 F.2d 1472 (5th Cir.1985).
McQueen now contends that the judge erred; that is, issuance of the protective order was "inappropriate" because he was precluded from discovering any evidence which may have helped him to pierce the Sheriff's immunity and defeat the motion for summary judgment.
The Sheriff counters that McQueen was provided ample opportunity to complete discovery; that is, eight months transpired from the time McQueen filed his original complaint to the time the Sheriff filed his motion for a protective order. Moreover, the Sheriff contends that McQueen's Rule 56(f) affidavit was insufficient to overcome his motion for summary judgment:
[I]n resisting summary judgment[, a party] must present specific facts stating why he cannot oppose the motion and must specifically demonstrate "how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact."
The party opposing the motion for summary judgment may not, as was done in Plaintiff's Rule 56(f) affidavit, rely on vague assertions that discovery will produce needed, but unspecified, facts particularly where there was ample time and opportunity for discovery.

2.
The Sheriff is correct; McQueen did have eight months to complete discovery prior to the judge's issuance of the protective order. This Court holds that the trial judge did not abuse his discretion in deciding that eight months was a sufficient amount of time for McQueen to complete discovery. A recently-decided case  Malone v. Aetna Cas. & Surety Co.  provides some guidance on this point:
On October 1, 1986, the wrongful-death beneficiaries of Cala Malone sued Aetna Casualty and Surety Company ("Aetna") seeking uninsured-motorist benefits. Months later, Aetna filed a motion for summary judgment, and the beneficiaries responded that the motion had been filed prematurely because pre-trial discovery had not been completed. The beneficiaries then filed a "MOTION TO COMPEL ... AETNA TO RESPOND TO DISCOVERY." The trial judge held a hearing and granted Aetna's motion. The beneficiaries appealed.
... .
A motion for summary judgment may be made "at any time" upon expiration of thirty days from the date the suit was filed. MISS.R.CIV.P. 56(a). Thus, Aetna filed its motion in a timely manner. This notwithstanding, the record supports the beneficiaries' claim that discovery had not been completed by the time the hearing on the summary-judgment motion had commenced. The beneficiaries should have been provided reasonably sufficient time to develop their theory of liability.
This conclusion is consistent with this Court's holdings in other factually-analogous cases. For example, in Hudson v. Parvin, the defendant had filed a motion for summary judgment, and the plaintiff had requested additional time to gather critical evidence and present it in opposition to the motion. 511 So.2d 499, 499-500 (Miss. 1987). The trial judge refused the plaintiff's request, and this Court reversed on the basis that "fairness required a continuance of limited duration *924 to afford this plaintiff the opportunity to go forward, if possible, with her case." Id. at 500 (citing cases).
The prudence of providing a party with reasonably sufficient time to develop his or her case may be gleaned from this State's rules of civil procedure and case law. For example, in Cunnigham v. Lanier, this Court concluded:
Justice is served when a fair opportunity to oppose a motion is provided  because consideration of a motion for summary judgment requires a careful review by the trial court of all pertinent evidence in a light most favorable to the nonmovant.

555 So.2d 685, 687 (Miss. 1989) (emphasis in original) (citing Brown v. Credit Center, Inc., 444 So.2d 358 (Miss. 1983)); cf. MISS.R.CIV.P. 12(c) (When a Rule 12 motion is treated as a Rule 56 motion, "all parties shall be given reasonable opportunity to present all material made pertinent to such motion by Rule 56.").
... .
In sum, the trial judge prematurely ruled on Aetna's motion for summary judgment. See Hudson, 511 So.2d at 500 ("The [C]ourt is of the opinion that the motion for summary judgment was hastily granted in favor of [the defendant]."). The beneficiaries' request for additional time to complete discovery seems reasonable; indeed, no evidence evinces the converse. Therefore, this case is reversed and remanded for proceedings consistent with this opinion.
583 So.2d 186 at 187 (Miss. 1991). Thus, Malone's "Motion to Compel ... Aetna to Respond" indicated to this Court that Aetna may not have been completely forthright with all of Malone's discovery requests. In view of this fact, this Court concluded that the judge should have provided Malone with more time to complete discovery before considering the motion for summary judgment.
In the case sub judice, McQueen waited until December 27, 1988, before attempting to uncover evidence to oppose the Sheriff's motion for summary judgment. On that date, McQueen filed "notices" that he planned to depose Minnick, Dyess, and J.C. Denham (the Sheriff's deputy). McQueen filed these notices eight months after he filed the original complaint and after the Sheriff filed his motion for a protective order. The belatedness of these notices is wholly unexplained. In this regard, the United States Supreme Court in Mitchell v. Forsyth stated:
[This Court has] refashioned the qualified immunity doctrine in such a way as to "permit the resolution of many insubstantial claims on summary judgment" and to avoid "subject[ing] government officials either to the costs of trial or to the burdens of broad-reaching discovery" in cases where the legal norms the officials are alleged to have violated were not clearly established at the time... . [I]f the plaintiff's complaint adequately alleges the commission of acts that violated clearly established law, the defendant is entitled to summary judgment if discovery fails to uncover evidence sufficient to create a genuine issue as to whether the defendant in fact committed those acts. Harlow thus recognized an entitlement not to stand trial or face the other burdens of litigation, conditioned on the resolution of the essentially legal question whether the conduct of which the plaintiff complains violated clearly established law.
472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411, 425 (1985) (citing Harlow v. Fitzgerald, 457 U.S. 800, 817-18, 102 S.Ct. 2727, 2737-38, 73 L.Ed.2d 396, 409-10 (1982)).
Under the circumstances, eight months would be a sufficient amount of time for McQueen to uncover any existing evidence of significant and probative value which would show that the Sheriff may have greatly or substantially exceeded his statutory authority. See Palmer, 564 So.2d at 1355.
In Mitchell and Harlow, the United States Supreme Court stated that "discovery should not be allowed" until the "threshold immunity question is resolved"  but only if the "plaintiff's allegations *925 [fail to] state a claim of violation of clearly established law." Mitchell, 472 U.S. at 526, 105 S.Ct. at 2815, 86 L.Ed.2d at 425; Harlow, 457 U.S. at 818, 102 S.Ct. at 2738, 73 L.Ed.2d at 411. In sum, McQueen's allegations, if true, are insufficient to pierce the Sheriff's qualified immunity; therefore, discovery should have been stayed. This Court affirms on all issues.
AFFIRMED.
ROY NOBLE LEE, C.J., and HAWKINS, P.J., and ROBERTSON, PITTMAN and BANKS, JJ., concur.
DAN M. LEE, P.J., and McRAE and SULLIVAN, JJ., dissent by separate written opinion.
McRAE, Justice, dissenting:
I respectfully dissent from the majority opinion affirming the granting of a summary judgment, because the lower court denied the plaintiffs the opportunity for discovery. The lower court's ruling is clearly contrary to the law and violates the plaintiff's right of confrontation of witnesses. Plaintiff had specifically requested to take the deposition of the defendant's witness who gave an affidavit which the court then used as a basis for its ruling on qualified immunity.
The amended complaint alleged that the sheriff violated ministerial aspects of his duties "by leaving the jail door unlocked and thereby permitting [an] escape." It was further asserted that the sheriff is charged with duties and responsibilities imposed by statute that are ministerial and not discretionary in nature, and that he was negligent in the administration of those duties. Some of those charges are as follows:
6. The Defendant [sheriff] and others knew that the said prisoners possessed a history of violence and the commission of violent crimes, were dangerous, prone to escape, and likely to do serious bodily harm to others if allowed or permitted to escape.
7. The Defendant is negligent per se in violating Miss. Code Ann. § 97-9-39 (Supp. 1986).
8. The Defendant had a ministerial duty to confine Robert Minnick and James "Monkey" Dyess and failed to perform this duty through his negligence, recklessness, and gross negligence in leaving the jail door unlocked and thereby permitting the two prisoners to escape from the jail undetected.

The majority has affirmed the lower court's finding that the sheriff is entitled to the protection of qualified immunity because the securing of prisoners is a discretionary function. I disagree. To reiterate the often-repeated rule of Poyner v. Gilmore, 171 Miss. 859, 158 So. 922 (1935):
While no inflexible rule can be laid down for determining in every case whether or not an act of a public officer is ministerial or judicial, "The most important criterion, perhaps, is that (if) the duty is one which has been positively imposed by law and its performance required at a time and in a manner or upon conditions which are specifically designated, the duty to perform under the conditions specified not being dependent upon the officer's judgment or discretion," the act in discharge thereof is ministerial.

(emphasis added)
The duties of a sheriff with regard to the securing of prisoners is clearly specified by law, as the plaintiff pointed out in the response to the motion for summary judgment. Miss. Code Ann. § 19-25-69 (1972) provides:
The sheriff shall have charge of the courthouse and jail of his county, of the premises belonging thereto, and of the prisoners in said jail... .
Miss. Code Ann. § 19-25-35 (1972) further provides that:
He shall take into his custody, and safely keep, in the jail of his county, all persons committed by order of either of said courts, or by any process issuing therefrom, or lawfully required to be held for appearance before either of them.
Finally, Miss. Code Ann. § 19-25-75 (1972) provides:

*926 If the jail be insufficient or if there be danger of escape ... of any prisoner therein, ... or if the sheriff or jailer shall have any person or persons lawfully in his custody and there be danger of ... escape ... it shall be the duty of the sheriff or jailer to summon a sufficient guard to protect and secure such prisoner ... so long as the same may be necessary and no longer... .
In Marshall v. Chawla, 520 So.2d 1374 (Miss. 1988), this Court wrote, "[t]he legislature may, by prescribing specific duties of individual state employees, implicitly create tort liability for breaches of them resulting from gross negligence." The laws of this state explicitly provide a penalty for sheriffs who either wilfully or negligently fail to properly secure those prisoners in their custody. This further contradicts the notion that this is a discretionary duty whereby the veil of immunity is pierced only by malice, willfulness or an abuse of discretion.
As Miss. Code Ann. § 97-9-39 (Supp. 1986) provides:
If any sheriff ... shall suffer any person lawfully committed to his custody to escape and go at large, either willfully or negligently; ... he shall, upon conviction, be punished by imprisonment in the county jail not exceeding one (1) year, or by fine not exceeding One Thousand Dollars ($1,000).00, or both. (emphasis added)
Moreover, in Shattuck v. State, 51 Miss. 575 (1875), this Court stated:
[W]herever an escape is shown, the law implies negligence on the part of the sheriff into whose custody the prisoner has been placed, and it is not necessary for the state to prove negligence to procure a conviction; that when the escape has been shown to the satisfaction of the jury, of a prisoner in the custody of the sheriff, the jury should find him guilty unless he has shown, to their satisfaction, that such escape was caused by the act of God, or other irresistible adverse force, for this defense alone can avail the sheriff in such case; and that the insecurity of the jail constitutes no defense.
51 Miss. at 580.
In less often-quoted language from Poyner v. Gilmore, 158 So. at 923, this Court also stated:
[t]hat a necessity may exist for the ascertainment, for personal knowledge or by information derived from other sources, of those facts or conditions, upon the existence or fulfillment of which, the performance of the act becomes a clear and specific duty, does not operate to convert the act into one judicial in nature. Such, it is said, is not the judgment or discretion which is an essential element of judicial action.
The Poyner Court observed that "a sheriff must determine whether process coming into his hands for service, is issued from a court of competent jurisdiction and is regular on its face ... but the execution of the process ... [is a] ministerial act." Id. By the same token, it may be said that while it may have been within the sheriff's discretion to determine whether, based on the information available to him, Minnick and Dyess were dangerous, once that determination was made, the act of keeping them under lock and key was a ministerial duty.
The trial court further determined that the sheriff owed no duty to the public. If we are to accept this premise, to whom does he owe a duty? As the plaintiff indicated in the response to the motion for summary judgment, other jurisdictions have found that such a duty does, indeed, exist. In Cansler v. State, 675 P.2d 57 (Kan. 1984), the Kansas Court stated:
The State also had a duty, in this day of modern communication, to notify area residents by some prearranged signal  siren, bell, whistle, prompt news release to local media, or some other method  as soon as a major escape such as this was known to prison officials, it further had a duty to notify area law enforcement officials promptly through the usual police communication channels. These would include telephone, radio, teletype or computer communications to surrounding law enforcement agencies. Radio dispatchers *927 for those various agencies could then notify the officers on duty immediately. We conclude that Cansler has adequately alleged a duty on the part of the State, a breach thereof, and a causal connection between the breach of that duty and the injuries and damages sustained.
675 P.2d at 66.
Plaintiff further cites Ryan v. State, 656 P.2d 597 (Ariz. 1982), in which a prisoner escaped from incarceration due to negligence of the defendant, robbed a convenience store, and shot the plaintiff, Ryan, with a sawed-off shotgun. The defendants moved for a summary judgment on the basis that the allegations of the complaint failed to give rise to a duty owed the plaintiff individually, rather, the duty was to the public as a whole. The Arizona Supreme Court rejected this contention and observed:
We shall no longer engage in the speculative exercise of determining whether the tort-feasor has a general duty to the injured party, which spells no recovery, or if he had a specific individual duty which means recovery (citations omitted). Thus, the perimeters of duty owed by the state will ordinarily be co-extensive with those owed by others.
656 P.2d at 599.
Likewise, the Restatement (Second) of Torts, § 319, states:
One who takes charge of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled is under a duty to exercise reasonable care to control the third person to prevent him from doing such harm.
Further, on March 8, 1990, prior to the motion for summary judgment being heard, but while the motion for protective order had been granted, plaintiff's counsel urged the court, by filing his MRCP Rule 56(f) affidavit that the facts concerning the liability of the defendant were known only to hostile witnesses and witnesses identified and in close association with the defendant; that the plaintiffs were unable to procure affidavits to oppose defendant's affidavits; and that, although discovery had been sought by the plaintiffs, the court had stayed and held in abeyance pending its ruling on the motion for summary judgment, filed only on the basis of the alleged qualified immunity of the defendants. He therefore urged the court to allow discovery to obtain the evidence and facts to justify the opposition to said motion. The granting of the protective order effectively precluded the plaintiff his right to confront the defendant's witness, who gave an affidavit in support of the defendant's position, which the court considered. This witness happened to be one from whom the plaintiffs attempted to take a discovery deposition but were precluded from so doing.
The trial court was in error in not allowing any discovery and rendering the summary judgment on the issues. It should have considered it as a MRCP Rule 12(b) motion and determined first if the complaint stated a cause of action. It is this writer's opinion that the complaint did state a cause of action and, therefore, the court should have allowed discovery or limited discovery to be obtained from the hostile witnesses of the defendant, or witnesses that are closely associated with the defendant. Plaintiff gave notice in December of 1989 to take the depositions of one of the affiants, J.C. Denham, a deputy sheriff, who was readily amenable to give an affidavit in support of the defendant's motion to dismiss. However, the plaintiff could not take his deposition to even confront the general statement made in the affidavit.
Plaintiff has followed MRCP Rule 56(f) by filing an affidavit and listing areas with the facts that he surmises to be in opposition to the motion for summary judgment; however, because the defendant's motion for protective order was granted and discovery was not allowed by the plaintiff of even those witnesses friendly to the defendant, all being hostile to the plaintiff, the plaintiff was precluded from doing any discovery to oppose said motion. A motion for summary judgment is based on the pleadings and any affidavits, depositions and other forms of evidence relevant to the merits of the challenged claims or defenses *928 available at the time the motion is made. The movant is responsible to see that there are no genuine issues of any material facts and that he is entitled to a judgment on the merits as a matter of law. Brown v. Credit Center, 444 So.2d 358 (Miss. 1984). The allegations in the amended complaint clearly show that these were ministerial acts on the part of the sheriff, that he had charge of the premises, that it was his duty to see that these prisoners were incarcerated, and, further, knowing them to be violent prisoners, it was his duty to notify the public of an escape once one occurred. These were certainly enough material facts to have this matter go forward to the jury, or at least to allow limited discovery by the plaintiffs to obtain said facts. Further, once the affidavits were filed, the plaintiff should have been allowed to take the depositions of those witnesses involved, particularly in view of the fact the defendant called them in support of his motion.
I, therefore, respectfully dissent and state that the motion for summary judgment should have been denied, and that the matter should be remanded to the trial court for further discovery and trial.
DAN M. LEE, P.J., and SULLIVAN, J., join this dissent.
NOTES
[1] None of the plaintiff's affidavits substantiated in any way the charges in the complaint that the sheriff or his employees left the jail door unlocked. The sheriff denied any such acts. Had there been an affidavit supportive of this allegation, there would have been an issue of material fact of the sheriff's commission of willful wrongs, and if so, limited discovery may have been permitted to develop this issue.
[2] As noted in Section I(A), the judge limited the parties' briefs to the sole issue of whether the Sheriff is entitled to immunity from any liability.
[3] The judge reached his decision by "adopt[ing] the findings of facts and conclusions of law set forth" in Robinson v. Williams, 721 F. Supp. 806 (S.D.Miss. 1989).

Robinson was a wrongful-death action instituted against Sheriff Williams by the family of Donald Thomas, who was murdered along with McQueen's father by Minnick and Dyess. The Sheriff moved for summary judgment on the basis that he owed no duty of care to the plaintiffs in preventing Minnick and Dyess' escape.
[4] Miss.R.Civ.P. 56(f) provides:

(f) When Affidavits Are Unavailable. Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such order as is just.