# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 1999-IA-01172-SCT

*BILL O. GANT AND ALCORN COUNTY, MISSISSIPPI*

*v.*

*LILA MANESS*

## ON MOTION FOR REHEARING

| | |
|---|---|
| DATE OF JUDGMENT: | 06/30/1999 |
| TRIAL JUDGE: | HON. BARRY W. FORD |
| COURT FROM WHICH APPEALED: | ALCORN COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | WENDELL H. TRAPP, JR. |
| | WILLIAM HULL DAVIS, JR |
| ATTORNEY FOR APPELLEE: | JAMES C. PATTON, JR. |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | REVERSED AND RENDERED - 6/7/2001 |
| MOTION FOR REHEARING FILED: | 4/16/2001 |
| MANDATE ISSUED: | 6/28/2001 |

**EN BANC.**

**MILLS, JUSTICE, FOR THE COURT:**

¶1. The motion for rehearing is denied. The original opinions are withdrawn, and these opinions are substituted therefor.

¶2. This interlocutory appeal arises from the Circuit Court of Alcorn County, which on June 19, 1999, denied the summary judgment motion of Bill Gant and Alcorn County as to their liability in this personal injury action. The issues certified for interlocutory appeal regard sovereign immunity, qualified immunity, statutory immunity, and the duty of care owed by a public official to a specific member of the public.

## FACTS

¶3. Danny R. Thompson, who is not a party in this case, pled guilty to second-offense DUI on April 4, 1991. He was sentenced to serve six months in the Alcorn County jail beginning on April 5, 1991. The justice court judge modified the sentence to allow Thompson to leave the jail for work every day and to return in the evening. The jail log reads as follows: "Sentence six months; let him go to work every day at 6:00 a.m. and return every evening. J. Norman." Lila Maness alleges that on Sunday, April 7, 1991, at 6:10 p.m., she was involved in an automobile accident with Thompson. According to Maness, the accident report reveals that Thompson was cited for DUI and for driving without a license. A copy of this report is not included in the record.

¶4. Maness subsequently pursued a claim against Thompson and his insurance carrier as well as her own uninsured motorist carrier and recovered a total of $18,657. In addition, on January 21, 1994, Maness filed suit against Alcorn County and Bill O. Gant, who at the time of the accident was Sheriff of Alcorn County.

Maness asserts that Gant, by releasing Thompson from jail, permitted the automobile accident to occur. It is undisputed that Thompson was not an employee or agent of either Gant or Alcorn County.

¶5. Maness alleges that Sheriff Gant failed to remain properly informed of the whereabouts and actions of Thompson during Thompson's incarceration. She refers this Court to Gant's deposition which, she alleges, reveals Gant's negligence and lack of knowledge regarding Thompson's "comings and goings." Unfortunately, no excerpts from Gant's deposition are included in the record before this Court.

¶6. Gant and Alcorn County filed their motion for summary judgment on March 3, 1999. The circuit court denied the motion but subsequently certified issues for interlocutory appeal. We granted this interlocutory appeal on September 24, 1999.

## STANDARD OF REVIEW

¶7. The issues presented on this interlocutory appeal are questions of law. We review questions of law de novo. *See Saliba v. Saliba*, 753 So. 2d 1095, 1098 (Miss. 2000).

¶8. The standard for reviewing a grant or denial of summary judgment is the same standard as is employed by the trial court under M.R.C.P. 56(c). *Massachusetts Bay Ins. Co. v. Joyner*, 763 So. 2d 877, 878 (Miss. 2000). This Court conducts de novo review of an order granting or denying summary judgment and examines all the evidentiary matters before it--admissions in pleadings, answers to interrogatories, depositions, affidavits, etc. *Id.* The evidence is viewed in the light most favorable to the party against whom the motion has been made. *Id.* If, in this view, the moving party is entitled to judgment as a matter of law, summary judgment should forthwith be entered in his favor. *Id.* Otherwise, the motion should be denied. *Id.*

## ANALYSIS

### I. WHETHER SHERIFF GANT CAN BE SUBJECT TO LIABILITY FOR COMPLYING WITH THE ORDER OF THE JUSTICE COURT OF ALCORN COUNTY, MISSISSIPPI.

¶9. Gant asserts that he cannot be subject to liability for Thompson's actions because he strictly adhered to the sentencing instructions given by the Alcorn County Justice Court. He relies on Miss. Code Ann. § 19-25-79 (1995), which states: "The sheriff of any county shall receive and keep any prisoner committed by a justice of the peace according to the order of commitment."

¶10. Maness argues that Gant has interpreted this statute in a manner that relieves him of any responsibility for ensuring that the sentence and commitment order are properly enforced. She asserts that the facts as revealed through Gant's deposition (which is not included in this record) do not show that Gant made a good faith effort to obey the order of the Alcorn County Justice Court. Maness alleges that Gant did not "keep up with the comings and goings of his prisoners." She emphasizes the fact that the automobile accident occurred on a Sunday evening, not a regular workday.

¶11. Thompson's order of commitment states: "Sentence six months; let him go to work every day at 6:00 a.m. and return every evening. J. Norman." The order does not specify certain days of the week while excluding others. Sheriff Gant was required to permit Thompson to leave *every* day. Had he failed to allow Thompson to leave, Gant would have been subject to charges of contempt. *See DeWitt v. Thompson*, 192 Miss. 615, 7 So. 2d 529, 532 (1942) (stating, "Here we have an order of the court issued to the sheriff, who had to obey the order or subject himself to punishment for contempt.").

¶12. In *Simpson v. Wells Lamont Corp.*, 494 F.2d 490, 494 (5th Cir. 1974), the Fifth Circuit held that public officials were duty-bound to execute an order which was valid on its face. In that case a pastor had been relieved of his duties with a Methodist church in Eupora. *Id.* at 492. When he refused to leave the parsonage, church officials obtained an eviction order which was executed by the sheriff and his deputies. *Id.* Simpson later sued the law enforcement officers for executing the order of the justice of the peace. *Id.* The Fifth Circuit found that the officers' "good faith compliance with [their] duty relieves them of liability." *Id.* at 495.

¶13. Maness acknowledges that "the general premise that the sheriff would not be liable for a tort as a result of obeying a court order pursuant to the aforesaid § 19-25-79 of our codified state laws is applicable to the subject factual scenario." She asserts, however, that according to *Simpson* Gant must show that he made a "good faith effort" to comply with the order. She argues that he fails to do so. Her only method of supporting this argument, however, is her reference to Gant's deposition where he allegedly reveals his negligence and lack of involvement in Thompson's incarceration. As previously noted, this deposition is not included in this record. Therefore, we are left to examine the order on its face in conjunction with the undisputed facts. The order required Gant to allow Thompson to leave *every* day. It is undisputed that he made this allowance. There is no evidence before this Court indicating that Thompson did not work on Sundays; nor is there evidence that Gant was negligent in his supervision and awareness of Thompson's "comings and goings." Therefore, we find that Gant complied with the justice court order and is not subject to liability for doing so.

## II. WHETHER SHERIFF GANT OWED A DUTY OF CARE TOWARD THE PLAINTIFF INDIVIDUALLY.

¶14. Maness asserts that Sheriff Gant had a duty to protect third parties from foreseeable injury at the hands of Thompson. She argues that Gant knew or should have known that Thompson had a propensity to drive under the influence of alcohol, that he was incarcerated to protect the public from his driving while intoxicated, and that his driving while intoxicated would pose a risk to other drivers.

¶15. Before an individual defendant may be found to be negligent, thereby entitling a plaintiff to recover from that defendant, the plaintiff must show the existence of a legal duty owed by the defendant to the plaintiff. *J.C. Penney Co. v. Sumrall*, 318 So. 2d 829, 832 (Miss. 1975). In *Robinson v. Estate of Williams*, 721 F. Supp. 806 (S.D. Miss. 1989), the district court applied Mississippi law to determine whether a sheriff was subject to suit by the estate of an individual who had been murdered by inmates who had escaped from the county jail. The court held that the statutorily-imposed duties of a sheriff in Mississippi are duties owed to the public as a whole and are, therefore, not actionable by a specific plaintiff, absent a compelling showing of extraordinary circumstances. *Id.* at 808. The court stated:

> As far as the Court can determine, no Mississippi court has squarely addressed the duty issues presented herein. However, from the Mississippi authorities discussed, the Court finds it highly unlikely that the Mississippi courts would consider the sheriff to have owed a duty of care to plaintiff's decedent. The sole factor which distinguishes plaintiff's decedent from the populace of Clarke County is the harm he suffered allegedly as a result of the sheriff's negligence. This, according to longstanding Mississippi law, is clearly insufficient to establish a duty of care owing to him in particular:
>
> when the duty imposed upon an officer is one solely to the public, the failure to perform it, or an

erroneous or negligent performance, is regarded as an injury to the public and not to an individual member of the public; and an individual harmed thereby may not have redress against the officer unless the individual had in it such a direct and distinctive interest as to set him apart from all others of the public in respect to it, and the fact of the injury does not in itself serve to make out the direct and distinctive interest which is essential.

*Id.* (quoting *State ex rel. Boyle v. Mathews*, 196 Miss. 833, 18 So. 2d 156, 158 (1944)). The *Robinson* court granted the sheriff's motion for summary judgment and held that even if the sheriff was negligent as alleged, he was nonetheless protected from liability. *Id.*

¶16. The facts of the case sub judice reveal that Maness is not within a category of persons setting her apart from members of the public as a whole with respect to Gant's duty as sheriff. Excerpts from her deposition (which, unlike Gant's, are found in the record) include her admissions that she did not know Thompson, had never met him before the accident, had never spoken with him in person or by telephone, had no knowledge of his criminal or court record, had never been in a court proceeding involving Thompson, and had never testified against him. Thus, Maness cannot establish "such a direct and distinctive interest as to set [her] apart from all others of the public in respect to" the sheriff's duty owed to the public as a whole. *Id.* Because Gant owed no duty to Maness as an individual, we find that he cannot be liable to her under the facts of this case.

### III. WHETHER SHERIFF GANT IS ENTITLED TO QUALIFIED IMMUNITY TO PLAINTIFF'S CLAIMS.

¶17. Under this issue, Sheriff Gant contradicts a portion of his previous argument. In asserting that he cannot be subject to liability for strictly obeying the order of the justice court, Gant argued, in effect, that his responsibilities in adhering to commitment orders are ministerial. In fact, he referred this Court to the following statement at 60 Am. Jur. 2d, *Penal and Correctional Institution*s § 22, at 1140-41 (1987):

The duty of an officer in executing the mandate of a judicial order in the nature of a commitment is purely ministerial and his power with respect thereto is limited and restricted to compliance with its terms.... The custodian of a prison on receiving a commitment can do only what the commitment orders him to do, that is, receive and safely keep the prisoner, so that the latter may then be discharged in due course of law.

(footnotes omitted). He also pointed to *United States v. Hoffman*, 13 F.2d 269 (N.D. Ill. 1925), *aff'd*, 13 F.2d 278 (7th Cir. 1926). There the court stated, "In cases where a person is committed to prison pursuant to his conviction of a prison offense, the jailer has no discretion (except in cases of emergency) but to obey the warrant of commitment." *Id.* at 271.

¶18. Now, in developing his argument for qualified immunity, Gant asserts that his duties regarding Thompson's incarceration were discretionary and that he is, thus, entitled to qualified immunity. Indeed, the doctrine of qualified immunity has generally been perceived to shield from liability public officials acting in good faith in the performance of lawful duties requiring personal deliberation, decision, and judgment. *Davis v. Little*, 362 So. 2d 642, 643 (Miss. 1978). Ignoring for the moment Gant's apparent contradiction, we must simply determine whether Gant's acts in regard to the incarceration and release of Thompson were discretionary or ministerial.

¶19. **McQueen v. Williams**, 587 So. 2d 918 (Miss. 1991), is a companion case to **Robinson**, which is discussed above. In **McQueen**, the family of another individual murdered by the same escaped inmates in **Robinson** brought a wrongful death action against the sheriff for his negligence in securing the inmates. **Id.** Directing this Court to various Mississippi statutes which impose upon a sheriff the duty to "keep prisoners confined," the plaintiffs argued that the sheriff had violated a ministerial duty. **Id.** at 922. We rejected the plaintiffs' argument and found that, though there is a duty to keep prisoners confined, there is discretion, deliberation, and judgment involved in the manner in which such a duty is performed. **Id.** We held that, notwithstanding the plaintiffs' ability to demonstrate a duty owed by the sheriff to the public, because the duty regarding the incarceration of prisoners was one involving discretion, the sheriff was shielded from liability by the doctrine of qualified immunity. **Id.**

¶20. The facts of the case at bar more strongly compel a finding of qualified immunity than those in **McQueen**. Gant was specifically ordered by the justice court to "let [Thompson] go to work every day." If qualified immunity shielded the sheriff in **McQueen**, who had unequivocal orders to confine two convicted murderers, then the protection of that doctrine should be available to Gant, who was adhering to the justice court's specific orders to release the inmate. Thus, despite Gant's previous contradictory indication that Thompson's confinement was a ministerial duty, we find that Gant was performing a discretionary act in allowing Thompson's release and is, therefore, entitled to qualified immunity.

### IV. WHETHER ALCORN COUNTY IS ENTITLED TO ASSERT SOVEREIGN IMMUNITY.

¶21. In her brief submitted to this Court, Maness concedes "that Alcorn County as a separate defendant is entitled to the defense of sovereign immunity based on the state of the law at the time of the subject collision."[1] Thus, we find no reason to address this issue.

### CONCLUSION

¶22. We find that Sheriff Gant is entitled to the protection of qualified immunity and to the defense of "absence of duty." As Gant's counsel notes, "These are not novel arguments based upon contorted extrapolation of obscure dicta in an ancient case." We have addressed these issues under very similar factual settings, and our previous findings compel a holding that Gant is shielded by qualified immunity and is not subject to liability for Thompson's actions. Consequently, Gant is then entitled to judgment as a matter of law; for, this case does not turn upon the resolution of conflicting factual issues. Rather, it is simply a case which depends upon the application of existing law clearly indicating the defendants' entitlement to summary judgment. Therefore, we reverse the circuit court's denial of Gant's and Alcorn County's summary judgment motion and render judgment in their favor.

¶23. **REVERSED AND RENDERED.**

**SMITH, WALLER, DIAZ AND EASLEY, JJ., CONCUR. BANKS, P.J., CONCURS IN PART I AND IN THE RESULT. COBB, J., CONCURS IN RESULT ONLY. McRAE, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY PITTMAN, C.J.**

**McRAE, PRESIDING JUSTICE, DISSENTING:**

¶24. The majority opinion states that Gant is immune from liability for the accident caused by Thompson. Thompson should not have been allowed to drive a car because he had been convicted of his second DUI

offense. Thompson, having his license suspended for his second DUI conviction, should not have been allowed to drive by Sheriff Gant. This was a clear violation of the law as his driving privileges were suspended for two years. Thompson could not have even applied for a hardship exception to his license suspension, under Miss. Code Ann. § 63-11-30(2)(a) (1996 & Supp. 2000), until after thirty days of his conviction. Thompson entered his plea on April 4, 1991, and the accident happened on April 7, 1991. Sheriff Gant, being well aware of the situation, acted in gross negligence and in clear violation of our precedent set forth mainly in *Turner v. City of Ruleville*, 735 So. 2d 226, 227-28 (Miss. 1999). Thompson had to make his own arrangements for transportation or Gant should have driven Thompson or had him escorted to work by another deputy or law enforcement official. Accordingly, I dissent.

¶25. Miss. Code Ann. § 63-11-30(2)(b) states the penalties for a second conviction of a DUI offense as follows:

> Upon any second conviction of any person violating subsection (1) of this section, the offenses being committed within a period of five (5) years...The minimum penalties shall not be suspended or reduced by the court and no prosecutor shall offer any suspension or sentence reduction as part of a plea bargain....Except as may otherwise be provided by paragraph (d) of this subsection[2], the Commissioner of Public Safety **shall** suspend the driver's license of such person for two (2) years.

(insertion of footnote & emphasis added).

¶26. Although § 63-11-30(2)(a) provides for a hardship exception and for a reduction of the suspension period, it further states,

> **[N]o court may issue such an order reducing the suspension of driving privileges under this subsection until thirty (30) days have elapsed from the effective date of the suspension. Hardships shall only apply to first offenses under Section 63-11-30(1), and shall not apply to second, third or subsequent convictions of any person violating subsection (1) of this section.**

(emphasis added.)

¶27. Gant and Alcorn County do acknowledge, however, that "[O]n or about April 4, 1991, Thompson entered a plea of guilty in Alcorn County Justice Court to the offense of DUI-2nd." The fact that Thompson was a second-time offender is also reflected in the "Defendants Petition for Interlocutory Appeal by Permission." The accident between Maness and Thompson occurred on April 7, 1991, four days after his conviction.

¶28. Even if Thompson's conviction was considered a first DUI offense, the least amount of time his license could have been suspended would have been thirty (30) days, pursuant to the hardship exception above. Gant was on notice of this sentence and that by law, he could not drive. This is gross negligence. Gant erred by allowing Thompson to drive himself to and from work. It was proper under the court's order to allow Gant to leave for work every day, but not to drive. Therefore, Gant is not protected by qualified immunity.

¶29. The present facts are similar to the facts of *Turner v. City of Ruleville*, 735 So. 2d 226, 227-28 (Miss. 1999). In *Turner*, the appellant was injured in an automobile accident by a person driving under the influence of alcohol and without a driver's license. Turner also alleged that immediately prior to the accident, the other driver had been stopped by an officer of the City of Ruleville Police Department for "operating the vehicle in an erratic fashion and failing to have the vehicle's headlights." *Id.* at 227. Turner filed suit against

the City of Ruleville, asserting its responsibility for the actions of a police officer who allowed a driver to continue to drive, even though he knew that the driver was intoxicated.

¶30. In *Turner*, we held that Turner's claim did meet the standard of "reckless disregard," thereby exempting the officer from immunity protection under the Mississippi Tort Claims Act. *Id.* at 231. In this case, Gant acted recklessly by allowing Thompson to drive, with his knowledge that Thompson's license had been suspended due to a second DUI conviction. Until further notice, Gant should have had Thompson escorted to and from work and returned promptly to the jail. Gant and Alcorn County are not exempt under our Tort Claims Act.

¶31. For the above reasons, I dissent.

### PITTMAN, C.J., JOINS THIS OPINION.

1. The facts of the case sub judice occurred in April, 1991, prior to the Legislature's adoption of the Mississippi Tort Claims Act, Miss. Code Ann. §§ 11-46-1 to -23 (Supp. 2000).

2. Paragraph (d) of this subsection provides for the suspension to be reduced to one (1) year if the convicted person receives an "in-depth diagnostic assessment" and successfully completes a treatment program for "alcohol and/or drug abuse." Miss. Code Ann. § 63-11-30(2)(d).